OF THE

## STATE OF NEW JERSEY,

## ON APPEAL FROM THE COURT OF CHANCERY AND THE PREROGATIVE COURT,

JUNE TERM, 1896.

THE PENNSYLVANIA RAILROAD COMPANY, appellant,

| 54 | 647 |
|----|-----|
| d56 | 792 |
| 54 | 647 |
| f66 | 349 |

*v.*

THE NATIONAL DOCKS AND NEW JERSEY JUNCTION CONNECTING RAILWAY COMPANY, respondent.

1. The effect of filing an appeal to this court is to prevent the decree in the court of chancery from destroying or impairing the subject of the appeal, or being in any degree used for that purpose.

2. The right of appeal in this state is the creature of the statute, confirmed by the constitution; and as the creation of the right is given in general terms, such right is not to be restricted by the practice of the English courts.

3. The decree, whether interlocutory or final in the court below, will be construed and controlled so as to preserve the appellate cognizance of this court over the entire subject-matter, and for this purpose an injunction will be deemed to be continued or suspended, or a dissolved injunction revived.

On appeal from an order of the chancellor, whose opinion is reported in *National Docks &c. Railroad Co.* v. *Pennsylvania Railroad Co., 9 Dick. Ch. Rep. 167.*

The respondent, by condemnation, acquired the right to cross the car yard of the appellant, by means of a subterranean passageway.

The respondent contended that, in the proper construction of the passageway in question, it was necessary that the surface of the car yard should be raised, and that in making said subterranean roadway the tracks of the appellant, crossing such proposed excavation, would have to be cut and kept open during the progress of the work.

The execution of this project being resisted by the appellant, a bill was filed to quell such opposition, the result being a decree, which was thus expressed, viz. :

"That the defendants be and they hereby are enjoined and restrained from obstructing the complainant in the construction of its railroad and arch upon the route of the complainant, according to the plan and in the manner set forth in the order of amendment of the Hudson circuit court, dated September 30th, 1893, and in the statement filed July 11th, 1895, in the office of the clerk of said court &c , and from placing or maintaining any cars within the route of complainant upon defendants' yard tracks one, two and three, being the most southerly of the yard tracks in the care of defendants covered by complainant's route, until the complainant shall have completed its arch across said tracks " &c.

From this decree the appellant duly appealed within ten days from its date.

In this situation the respondent endeavored to proceed with its work, but such attempt was actively repulsed by the appellant, and which, in despite of the decree, maintained in its yard passenger cars on its tracks " two " and " three " at the place of respondent's crossing. As this conduct was in plain violation of the decree appealed from, on motion the appellant was adjudged to be in contempt, and it is this latter decree that was brought before this court by this appeal.

*Messrs. Vredenburgh & Garretson* and *Mr. Richard V. Linda-bury,* for the appellant.

*Messrs. Dickinson, Thompson & McMaster* and *Mr. Charles L. Corbin,* for the respondent.

The opinion of the court was delivered by

BEASLEY, C. J.

From the statement preceding this opinion, it appears that the appellant was enjoined from opposing the making a certain subterranean causeway through its car yard by the respondent, and that notwithstanding such inhibition the prohibited resistance was made. For that disobedience the appellant has been adjudged to be in contempt, and from this latter judgment the present appeal has been taken.

The appellant does not deny that it disobeyed the decree in question, both with respect to its mandatory and its prohibitive command, for it is admitted that it did not remove its trains as directed, and that it did obstruct the respondent in the construction of the archway in the manner that had been approved of by the chancellor. In this respect its contention was and is that, by its appeal, these mandates of the inferior court had been absolutely suspended, and that the appellant had the right to wholly disregard them.

It will be observed, therefore, that the single injury on this occasion is with respect to the effect of an appeal to this court from a decree rendered in the court of chancery. The chancellor adopted the theory insisted on by the respondent, that an appeal has no suspensive effect on the operative force of a decision in his court, and in this respect he has the support of sundry *dicta* in our own state and elsewhere. But such expressions of opinion were not called for in any of the cases cited, and must be regarded, consequently, as entirely *obiter,* while, at the same time, it must be conceded that a notion has long prevailed in the court of chancery that, to a large extent, it is one of its prerogatives to establish for this court the boundaries of its jurisdiction. And

this assumption has, exhibited itself not only in the *dicta* referred to, but also in the more imposing form of stated rules of court. When it is provided that an appeal shall not, *per se*, stay an interlocutory decree, and that when an appeal from a final decree has been put in within ten days after the filing of such final decree, the same shall be suspended, unless otherwise ordered, no room is left for doubt that the conviction exists that it is a function of the inferior court to regulate and define the force of the appellate process of this tribunal. It is difficult to understand how in right reason such a view should have obtained. The only reason that appears to have been assigned is, that it is, and for a long time has been, the practice of the court. But when we ask where such a practice has prevailed, the reply must be that it has prevailed only in the court of chancery, for it does not seem that it can be claimed that, in any respect, such a course of law has received the sanction of this court. It is not perceived that this court has ever permitted anything to be done in the lower court that, in any degree, has restricted or curtailed the power of this court to control, preserve and to adjudicate the entire appellate controversy. All the cases referred to in the opinion of the learned chancellor are to this effect, for every one of them exhibits a refusal of this court to give such an effect to an appeal as will have even a tendency to interfere with the exercise of its appellate faculty. It has at all times manifested in this matter a purpose to conserve its authority, its decisions in every instance tending in that direction.

An example in this line is afforded by the case of *Doughty* v. *Somerville Railway Co., 3 Halst. Ch. 633*, which is a leading authority relied upon in the court below. There an injunction had been dissolved and a stay ordered by the chancellor until the sitting of this court, and the question was whether this court could extend such stay until the hearing of the appeal. The argument against such extension was that an order for the continuance of the stay was an injunction, which mode of proceeding could be taken only by a tribunal exercising original judicature, and not by force merely of appellate authority. But this contention was overruled on the significant ground that the

disputed power belonged to this court as a necessity, the chief-justice thus stating the *ratio decidendi.* Referring to this tribunal, he says: "It may not exercise original power in acquiring jurisdiction over the cause. But that jurisdiction once regularly obtained, this court may exercise original jurisdiction over the parties, especially when the proceeding is *in rem* and the object of the order to maintain unchanged, as far as practicable, the *status* or condition of the subject-matter of the controversy during the pendency of the suit. It is on the same principle upon which a court of common law, in an action of ejectment or dower, will make an order upon the party in possession restraining the commission of waste. And a court of equity, prior to the hearing or argument, will, upon the same principle, grant a temporary injunction until the case can be heard. It is an inherent power in all superior tribunals essential to the attainment of the object of litigation and the ends of justice. I am of opinion, therefore, that this court must of necessity have the power to make the order applied for." And in the same case, in a similar vein, Mr. Justice Randolph thus expresses his views, saying: "The right to grant such an order must exist in the very nature of things. To deny it is to deny the right of appeal in the case, for if we have no power to protect the subject-matter of the appeal, then is the right nugatory." Most assuredly this case goes far to show that this court is possessed of whatever power is necessary to the consummate exercise of its functions. The effect of the inherent force of the appeal itself over the decree was not considered.

With respect to the cases cited from the reports of the decisions in the courts of the United States, it is considered that such determinations are altogether inapplicable, as the form of such appeals is regulated by statute and by a rule established by the supreme court of the United States. And so the authorities referred to from New York, Indiana and the other states, are, in a large degree, subject to the same criticism. It is also proper here to remark that each of these adjudications referred to had the effect of preserving the subject of appeal, and yet they are invoked to show that after an appeal its subject may be destroyed.

It consequently follows that in deciding the present issue, we must take as guides our own laws and constitution.

The subject is not at all complicated. Originally, in 1705, Lord Cornbury, by virtue of his commission as governor, established a court of chancery, in which he and his council were to preside, and were

"to hear and determine all causes and suits in said court which, from time to time, shall come before them, in such manner, or as near as may be, according to the usage or custom of the high court of chancery, in the kingdom of England."

This establishment continued in force until March 28th, 1770, when Governor Franklin, by virtue of his commission, in 1762, constituted himself chancellor and judge of the high court of chancery or equity of New Jersey. Governor Franklin continued in office until the constitution of New Jersey was formed —July 2d, 1776—and a few months after that event, on the 7th of October, 1776, the legislature enacted that the several courts of law and equity of New Jersey shall be confirmed and established, and continue to be held with the like powers under the present government as they were held at and before the Declaration of Independence. *Pat. L. p. 38.*

During this formative period, and for a short time subsequent, the decrees of the court of chancery were not appealable, the power of this court then being applicable alone to actions in the courts of common law. It was not until the year 1799, when our laws were in the hands of Mr. Justice Paterson for revision, that cognizance was conferred upon this tribunal to revise the decrees of the chancellor. These are the terms of the act referred to :

"That after final sentence or decree hath been pronounced in any cause or suit in the court of chancery, any person who may think himself aggrieved by any interlocutory order, or by any final decree in any cause or suit in chancery, may appeal from the court of chancery, against such order or decree, to the court of errors and appeals" &c. *Pat. L. p. 434.*

Afterwards, in the year 1820, a supplement to this act was passed extending this right of appeal to all orders or decrees not final, if made within thirty days after the order &c.

It thus appears that when, in the year 1844, the new constitution of this state was established, this court, by force of its original constitution and of the then existing statutes, had been clothed with an unlimited revisory power over all orders and decrees, whether final or not final, of the court of equity, and in this situation, by the sixth article of such new fundamental law, it was provided that "the judicial power shall be vested in a court of errors and appeals in the last resort in all causes as heretofore." This in effect was a declaration that the appellate power of this court should be and remain such as had been given to it by the two acts of the legislature just cited.

The effect of those two acts is, in my opinion, as plain as anything can be. They give the right to any person aggrieved to appeal—that is, to call upon the superior court to decide whether his rights or property shall be affected by the decree in the court below, and if so, to what extent. The entire purpose and object of the appeal is to preserve such rights and property from the ill effects of the decision that is challenged. Unless it produces such a result, the procedure is a mere form, and, in many cases, absolutely a useless form. The suitor in carrying his case up asks for protection against an erroneous decree; such protection is obviously refused to him if the decree can be enforced before its legality has been tested by the superior court. In fine, the very essence of the remedy by appeal is to prevent, for the time being, the appellant from this execution of the existing decree; and this being so, it is indisputable that when the statute grants the right of appeal, it grants such protection. A decree cannot be used detrimentally to the appellant, pending the appeal, for the plain reason that such a use will, for every practical purpose, defeat the appellate procedure.

Deriving from our own statute the right of appeal with the inherent force just defined, it becomes unnecessary to examine the remedy as it exists in other jurisdictions. In England, at the time of our revolution, an appeal to chancery had the effect of wholly suspending all proceedings in that court on the decree appealed from; so that if we had obtained, by inheritance, the appellate jurisdiction of the house of lords, such would have

been the force of this remedy with us at the present time, for the change subsequently made, in this respect, in the English practice by a rule of the house of lords, could have had no effect upon our procedure, inasmuch as such rule was ordained some time after our separation from the mother country. But the legislation referred to does not impart to this court an appellate power similar to that possessed by the English court of last resort, or similar to that of any other court, but confers the prerogative unrestricted by reference to practice or model.

Touching the contention which occupies so much space in the briefs of counsel, that a power rests in the discretion of the chancellor to execute or to refrain from executing the decree in his court during the pendency of the appeal, the conclusive answer is that such a function would be wholly inconsistent with the paramount cognizance given to this court over the subject. Such a theory would have the effect of reducing the absolute right of appeal, so clearly created by the statute, to a merely conditional right, such condition being the pleasure of the chancellor. If the inferior court can destroy the subject of the appeal, it necessarily follows that the remedy is not of right but of grace. By acceding to such a doctrine this court would abnegate the greater part of its authority in this domain vested in it by the legislature and the constitution. That such would be the result the present case exhibits a conspicuous proof. The decree, as it stood when the appeal was filed, enjoined the appellant to refrain from opposing the cutting of its tracks, and to facilitate such cutting by the removing out of the way certain of its trains. To prevent such cutting, which the appellant claimed would be an irreparable injury, this appeal was interposed, but the chancellor maintained that, unless he himself intervened, the decree was in full force and must be in all respects submitted to. In other words, the judicial doctrine was that, although the appellant had taken the proper steps to place before this court the question whether such cutting was justifiable, nevertheless the appellant must stand by and quietly submit to the destruction of the ground of its appeal, and must even actively assist in such destruction.

. I think it clear that such an hypothesis as this is a manifest invasion of the rightful jurisdiction of this court, for it deprives it of the ability to render anything more than a merely nominal decree in the given case.

In the case before us, therefore, the opinion of this court is that the decree in question lost for the time all its force, and that the appellant could not fall into contempt by resisting its execution.

It is likewise the opinion of this court that an appeal in all cases will have that effect given to it which shall be necessary to preserve the subject to which the appellate procedure relates, in such a condition as will enable this court to render an efficacious decree in the premises. That for this purpose an injunction decree will be suspended or continued, or a previous injunction revived, by the act of filing an appeal whenever such construction shall be necessary for the end just stated.

Let the decree before us be reversed.

*For reversal*—The Chief-Justice, Depue, Garrison, Gummere, Lippincott, Magie, Van Syckel, Barkalow, Bogert, Nixon—10.

*For affirmance*—Ludlow—1.