658 A.2d 1230

MANALAPAN REALTY, L.P., PLAINTIFF–APPELLANT, v. TOWNSHIP COMMITTEE OF THE TOWNSHIP OF MANALAPAN AND THE TOWNSHIP OF MANALAPAN, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS–RESPONDENTS.

MANALAPAN REALTY, L.P., A NEW JERSEY LIMITED PARTNERSHIP, PLAINTIFF–APPELLANT, v. MANALAPAN TOWNSHIP PLANNING BOARD, DEFENDANT–RESPONDENT.

HOME DEPOT USA, INC., INTERVENOR–APPELLANT, v. TOWNSHIP COMMITTEE OF THE TOWNSHIP OF MANALAPAN, THE TOWNSHIP OF MANALAPAN, AND MANALAPAN TOWNSHIP PLANNING BOARD, DEFENDANTS–RESPONDENTS.

Argued January 17, 1995—Decided June 6, 1995.

370

*Michael M. Rosenbaum* argued the cause for appellant Manalapan Realty, L.P., etc. (*Budd, Larner, Gross, Rosenbaum, Greenberg & Sade*, attorneys; *Mr. Rosenbaum, Robert Novack,* and *Mary L. Moore,* on the briefs).

*Michael B. Steib* argued the cause for appellant Home Depot U.S.A., Inc.

*Robert F. Munoz* argued the cause for respondents Township Committee of the Township of Manalapan and the Township of Manalapan (*Lomurro, Davison, Eastman & Munoz,* attorneys).

*James H. Gorman* argued the cause for respondent Manalapan Township Planning Board.

The opinion of the Court was delivered by

COLEMAN, J.

This appeal requires us to determine whether two amendments to the Township of Manalapan's (Township) zoning ordinance that exclude Home Depot U.S.A., Inc. (Home Depot) from Manalapan's C–1 regional commercial shopping-center district are substantially consistent with the Township's Master Plan (Master Plan). A majority in the Appellate Division, in an opinion published at 272 *N.J.Super.* 1, 639 *A.*2d 318 (App.Div.1994), held the amendments not arbitrary, capricious or unreasonable, and therefore substantially consistent with the Master Plan. We agree and affirm.

## I

### A.

Before 1990, the Township created a C–1 regional commercial shopping-center district through its zoning ordinance. The entire C–1 district is comprised of approximately 100 acres divided into two tracts. The C–1 district is bounded by Syms Road to the north, Craig Road to the south and U.S. Highway 9 to the east. Plaintiff Manalapan Realty, L.P. (Realty) is the owner of one of the two tracts consisting of approximately fifty-seven acres. Before October 1990, Realty built the Manalapan Mall on a portion of its property that contains approximately 186,000 square feet of commercial space.

On October 16, 1990, Realty submitted an application to the Township Planning Board (Board) for preliminary site-plan approval to expand its commercial-retail space to approximately 500,000 square feet and to rename the mall the Manalapan Epicenter (Epicenter). The proposed Epicenter included a number of anchor stores, one of which was to be a "home improvement center" operated by Home Depot. Home Depot engages in a form of merchandising known as "warehouse selling" or "warehouse format of selling." This concept represents an expansion of traditional retail stores. Examples of warehouse selling stores are Toys "R" Us, Staples, an office supply store, and Shopper's Food Warehouse, a warehouse approach to supermarkets.

When the application for site-plan approval was submitted, and at the time of the first public hearing on the application on May 9, 1991, the Manalapan Land Use and Development Ordinance (Manalapan Ordinance), § 130.94, permitted the following pertinent uses in a commercial shopping center:

(1)

        (a) Retail stores, shops and markets.

        (b) Personal services.

        (c) Offices and business services.

        (d) Banks and fiduciary institutions.

(e) Indoor recreation facilities.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

(2) Civic center uses....

(3) Temporary buildings....

(4) Farms.

One of the issues raised during the hearings before the Board on the site-plan application was whether Home Depot was a "retail store," a permitted use under the ordinance, or a "warehouse," a use not permitted under the ordinance. In addition, substantial public opposition to Home Depot as a proposed tenant in the Epicenter emerged. Off-site traffic and the nature of the Home Depot business were major concerns of the Board and members of the public as well. In an effort to resolve these and other concerns, Realty's experts met with the Township Committee, the Board and their respective planning experts. Two members of the Board also served as members of the Township Committee. While the Board conducted hearings on the application, it was formulating simultaneously a master plan pursuant to *N.J.S.A.* 40:55D–28 to guide the projected growth in the Township through the year 2010. On June 13, 1991, the Board requested its professional planner to address the question whether a Home Depot is a permitted retail use in the C–1 district. On June 27, 1991, the Board's senior supervising planner, Richard S. Cramer, advised the Board that Home Depot was a permitted retail store under the existing ordinance.

The Board conducted further public hearings on May 23 and July 18, 1991. After strong public opposition to Home Depot continued, the Township Committee adopted two amendments to the zoning ordinance on July 24, 1991. The first amendment more specifically defined the meaning of retail stores, shops and markets as permitted uses in the C–1 district. It provided:

(a) Retail stores, shops and markets including establishments engaged in the selling of paint, glass, wallpaper, or hardware items for household use, but not including any establishment engaged in the sale of lumber or building materials or storing, displaying, or selling materials outside a completely enclosed building.

[Manalapan Ordinance, § 130.94.]

The second amendment added a subsection to define "building materials" as used in the amendment. It defined "building materials" as:

> [m]aterials that can be arranged, united or joined to construct a building or structure. Such materials include, but are not limited to, rough or dressed lumber, millwork, roofing, shingles, wallboard, molding, plywood, sheetrock, bricks, doors, windows, paneling, concrete block, tiles, cabinets or plumbing fixtures.
>
> [Manalapan Ordinance, § 130.52.]

Both amendments were adopted after the Board, pursuant to *N.J.S.A.* 40:55D-26, found the proposed amendments to be substantially consistent with the Master Plan adopted shortly before the amendments were enacted.

### B.

On September 11, 1991, Realty filed its first complaint in lieu of prerogative writs challenging the validity of the amendments to the zoning ordinance. At the Board's next meeting, on September 12, 1991, the Board approved Realty's site plan application without Home Depot as an anchor tenant. The Board's resolution stated that after the zoning ordinance was amended during the pendency of the site-plan application, Realty modified its application to withdraw Home Depot as an anchor tenant. On October 1, 1991, Realty filed another complaint in lieu of prerogative writs challenging the Board's failure to resolve whether Home Depot was a permitted use prior to the amendments to the ordinance.

The Appellate Division accurately described the disposition of the two complaints by the Law Division and the issues raised in the appeal:

> The trial court consolidated these actions. Subsequently, it granted Home Depot leave to intervene as a plaintiff. After a six day bench trial, the trial court issued a written opinion [dated September 23, 1992] which concluded that the amendment to Manalapan's zoning ordinance was arbitrary and capricious and therefore invalid. The trial court also concluded that the proposed Home Depot store was a permitted use under Manalapan's prior zoning ordinance, which was reinstated as a result of the invalidation of the amended ordinance. Consequently, the trial court vacated the paragraphs of the Board's resolution which had left this question for later resolution in the event the ordinance were invalidated. Thereafter, Realty

and Home Depot filed motions to compel defendants to reimburse them for various litigation expenses. These motions were granted in part and denied in part.

The Township Committee appeals from the parts of the judgment declaring that the amended zoning ordinance is invalid and that the proposed Home Depot store is a permitted use under the now reinstated prior ordinance. The Township Committee also appeals from the post-judgment order awarding Realty and Home Depot various litigation expenses. The Board appeals from the part of the judgment which declares the Home Depot store to be a permitted use and from the post-judgment order awarding plaintiffs various litigation expenses. Realty and Home Depot cross-appeal from the parts of the post-judgment order which denied an award of the full amount of litigation expenses which they had sought. We consolidate the two appeals.

[*Manalapan, supra,* 272 *N.J.Super.* at 7–8, 639 *A.*2d 318.]

The Appellate Division reversed the Law Division and concluded that "the essential parts of Manalapan's amended zoning ordinance excluding retail stores which sell lumber or building materials ... are valid. Although the definition of 'building materials' contained in this amended ordinance may be too broad, any invalid part of that definition would be severable from the remainder of the ordinance and thus would not affect its validity." *Id.* at 8, 639 *A.*2d 318. The case was remanded to the Law Division to consider Realty's claim that the definition of building materials is overly broad. *Id.* at 15, 639 *A.*2d 318. The Appellate Division also found the amended ordinance was properly adopted even if in response to public opposition, *id.* at 12, 639 *A.*2d 318; that the ordinance as amended does not represent spot zoning, *id.* at 13–14, 639 *A.*2d 318; and that the amended ordinance is not inconsistent with the Master Plan. *Id.* at 13, 639 *A.*2d 318.

Judge Wefing filed a separate opinion concurring in part and dissenting in part. *Id.* at 15, 639 *A.*2d 318. She concluded that the amended ordinance is inconsistent with the Master Plan and is therefore violative of the Municipal Land Use Law, *N.J.S.A.* 40:55D–62a. *Id.* at 20, 639 *A.*2d 318. She also concluded that banning the sale of "building materials" in the C–1 zone is "over inclusive" and invalidates the ordinance because there is no rational relationship between the ordinance amendments and the alleged evils sought to be addressed. She felt no purpose would be served

by remanding the matter to the Board "to offer belated justifications for a defective ordinance." *Ibid.*

## II

The ordinary effect of the filing of a notice of appeal is to deprive the trial court of jurisdiction to act further in the matter unless directed to do so by an appellate court, or jurisdiction is otherwise reserved by statute or court rule. *Rolnick v. Rolnick,* 262 *N.J.Super.* 343, 365–66, 621 *A.2d* 37 (App.Div.1993); Pressler, *Current N.J. Court Rules,* comment 1 on *R.* 2:9–1(a) (1994). Here, however, the parties continued with the litigation in the trial court and before the Board after the appeals were filed. We, therefore, feel compelled to refer to these proceedings conducted during the pendency of the appeal to the Appellate Division. We do so out of caution, to complete the procedural history and to make clear what we do not decide.

The notice of appeal was filed with the Appellate Division by the Township on November 16, 1992, and by the Board on November 30, 1992, from the trial court's judgment dated October 16, 1992. The Appellate Division rendered its decision on March 14, 1994. Notwithstanding the pendency of these appeals, on July 7, 1993, Realty submitted a final site-plan application to the Board that included Home Depot as an anchor tenant. The Board denied the application on December 2, 1993. Two days after the appeals were decided, the trial court on March 16, 1994, granted a motion in aid of litigant's rights, *see Rule* 2:9–1(a), and approved Realty's final site-plan application that included Home Depot as an anchor tenant. That favorable decision was subject to future approval by the Board of an architectural plan for five free-standing pad site stores. The Board filed an appeal from the March 16, 1994 order. The Township and the Board filed separate appeals from an order of the trial court dated January 28, 1994, invalidating an ordinance that controls site-plan application fees. Those three appeals are pending disposition in the Appellate Division. We question, without deciding, whether the trial court had jurisdiction to enter the

March 16, 1994, order involved in one of the pending appeals. *See Neger v. Neger*, 93 *N.J.* 15, 38 n. 11, 459 *A*.2d 628 (1983). In any event, we do not decide those appeals even though our decision may render moot the appeal from the March 16 order.

In addition effective December 14, 1994, the Township Committee adopted new land-use regulations identified as Development Regulations of the Township of Manalapan (1994) (Development Regulations). The regulations contain a new definition of "building materials" in an apparent attempt to comply with the Appellate Division majority's concern that the definition in Manalapan Ordinance, § 130.52, was too broad. The new definition is as follows:

> "Building Materials" means materials that can be arranged, united, or joined to support, frame, enclose, sheath, or be otherwise fashioned into a building or structure. Such materials include, but are not limited to, rough or dressed lumber, millwork, roofing, wallboard, molding, plywood, sheetrock, bricks, doors, windows, paneling, or concrete block.
>
> [Development Regulations, § 2.4 at 2–6.]

■ Realty and Home Depot appeal to this Court as of right, *Rule* 2:2–1(a)(2), based on Judge Wefing's dissenting opinion. No petition for certification was filed. *Brandenburg v. Brandenburg*, 83 *N.J.* 198, 203, 416 *A*.2d 327 (1980). Consequently, the discussion that follows is limited to a review of the single issue on which the dissent was filed, namely, whether the amendments to the ordinance are substantially consistent with the Master Plan.

### III

■ Realty argues that the Appellate Division exceeded the scope of appellate review when it rejected findings made by the trial court. That argument must be analyzed in the context of the issues before the trial court. The Law Division described the issues in the following manner:

> The plaintiff's allegations can be divided into 2 major categories: (1) challenges to the ordinance amendments and (2) challenges to certain portions of the Planning Board's September 13, 1991 Resolution. The plaintiff has also brought a claim under 42 *U.S.C.* § 1983.

With regard to the amendments, the plaintiff claims that they are unlawful as inverse spot zoning. Moreover, the plaintiff asserts the amendments violate substantive due process since their enactment was arbitrary, capricious and unreasonable; discriminates against Home Depot; is not supported by substantial credible evidence; bears no rational relationship to the alleged public interest sought to be advanced; and is inconsistent with the Manalapan Master Plan.

The trial court found that because the amended ordinance prohibits *all* stores in the C–1 district from selling certain building materials such as lumber and from selling any materials in an unenclosed building, "the law [of] inverse spot zoning is [not] applicable in these circumstances." It also found no violation of 42 *U.S.C.A.* § 1983.

The trial court, however, found the amendments to the ordinance arbitrary, capricious and unreasonable because they "were targeted specifically at prohibiting Home Depot as a tenant in the Epicenter." The trial court also determined that "no rational relationship between the ordinance amendments and the defendant's purported objectives" existed and the purported objectives "do not in any way achieve the stated purpose of a comprehensive zoning plan."

█ Contrary to Realty's contention, the Appellate Division did not make new factual findings in violation of the scope of appellate review articulated in cases such as *Meshinsky v. Nichols Yacht Sales, Inc.*, 110 *N.J.* 464, 475, 541 *A.*2d 1063 (1988), and *Rova Farms Resort, Inc. v. Investors Ins. Co. of Am.*, 65 *N.J.* 474, 483–84, 323 *A.*2d 495 (1974). Rather, the Appellate Division disagreed with some of the trial court's legal conclusions because they were inconsistent with well-established law. A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference. *State v. Brown*, 118 *N.J.* 595, 604, 573 *A.*2d 886 (1990); *Dolson v. Anastasia*, 55 *N.J.* 2, 7, 258 *A.*2d 706 (1969); *Pearl Assurance Co. Ltd. v. Watts*, 69 *N.J.Super.* 198, 205, 174 *A.*2d 90 (App.Div.1961).

█ That a municipality may change its zoning ordinance during the pendency of a site plan application is beyond question. This is so even if the ordinance is amended in direct response to a

particular application. *See Morris v. Postma,* 41 *N.J.* 354, 362, 196 *A.*2d 792 (1964); *Burcam Corp. v. Planning Bd. Township of Medford,* 168 *N.J.Super.* 508, 512, 403 *A.*2d 921 (App.Div.1979); William M. Cox, *New Jersey Zoning and Land Use Administration,* § 28–3.5 at 435 (1994 ed.). Because the enactment of, or amendment to, a zoning ordinance is a legislative act, the Township's governing body is permitted to enact an amendment in response to objections to a proposed use of land as long as the amendment is consistent with the Municipal Land Use Law (MLUL). *Hyland v. Mayor & Township Comm. of Morris,* 130 *N.J.Super.* 470, 479–80, 327 *A.*2d 675 (App.Div.), *aff'd o.b.,* 66 *N.J.* 31, 327 *A.*2d 657 (1974). Consequently, even if Home Depot was a permitted use under the prior ordinance, the Township was free to change the ordinance in direct response to Realty's site-plan application that included Home Depot as an anchor tenant.

█ As a legislative body, the Township Committee has the authority to decide which types of stores it will allow as permitted uses within its commercial district where no fundamental right is involved. *See Pierro v. Baxendale,* 20 *N.J.* 17, 118 *A.*2d 401 (1955). Given that the amendments to the ordinance do not infringe upon a fundamental right of Realty or Home Depot, the Appellate Division properly confined its review to a determination whether the presumption of validity that attached to the amendment had been overcome. *Bell v. Township of Stafford,* 110 *N.J.* 384, 395, 541 *A.*2d 692 (1988); *Zilinsky v. Zoning Bd. of Adj. of Verona,* 105 *N.J.* 363, 368, 521 *A.*2d 841 (1987); *Kozesnik v. Township of Montgomery,* 24 *N.J.* 154, 167, 131 *A.*2d 1 (1957). *See Urban v. Planning Bd. of the Borough of Manasquan,* 124 *N.J.* 651, 659–60, 592 *A.*2d 240 (1991). Viewed in this context, the Appellate Division did not exceed the scope of appellate review.

## IV

█ Realty and Home Depot challenge the amended ordinance as inconsistent with the Master Plan that was adopted two months prior to enactment of the amendments. They assert that

the Master Plan, in failing to reflect dissatisfaction with either the proposed application of Home Depot and/or the existence of a Channel Home Center in the district, implicitly regards a home improvement center as a permitted use. They argue that the amendments to the ordinance are therefore inconsistent with the Master Plan. The Township asserts that the Master Plan designated the C–1 district as a regional commercial shopping center available for mixed uses but not available for *all* uses. The Township argues further that because the Master Plan is expressed in general terms it is of limited relevance in determining whether Home Depot is a permitted use.

The Legislature has enabled municipalities, through the exercise of the police power, to enact and amend zoning ordinances. *Riggs v. Township of Long Beach*, 109 *N.J.* 601, 610, 538 *A.*2d 808 (1988); *Taxpayers Ass'n of Weymouth Township v. Weymouth Township*, 80 *N.J.* 6, 20, 364 *A.*2d 1016 (1976), *appeal dismissed* and *cert. denied*, 430 *U.S.* 977, 97 *S.Ct.* 1672, 52 *L.Ed.*2d 373 (1977). A presumption of validity attaches to a zoning ordinance that may be overcome only if an opponent of the ordinance establishes the ordinance is "clearly arbitrary, capricious or unreasonable, or plainly contrary to fundamental principles of zoning or the [zoning] statute." *Bow & Arrow Manor, Inc. v. Town of West Orange*, 63 *N.J.* 335, 343, 307 *A.*2d 563 (1973); *accord Zilinsky, supra*, 105 *N.J.* at 368, 521 *A.*2d 841. An ordinance or amendment thereto must advance one of the fifteen general purposes of the MLUL specified in *N.J.S.A.* 40:55D–2. *Riggs, supra*, 109 *N.J.* at 611, 538 *A.*2d 808. Where, as here, an ordinance does not infringe upon a fundamental right, there is no requirement that it recite "tangible, specific objectives promoted by the ordinance in order to be valid." *Zilinsky, supra*, 105 *N.J.* at 371, 521 *A.*2d 841; *Bell, supra*, 110 *N.J.* at 395, 541 *A.*2d 692. Finally, the ordinance must be substantially consistent with the land-use plan element and the housing plan element of the Master Plan except for a few statutory exemptions not pertinent to this case. *See Zilinsky, supra*, 105 *N.J.* at 367, 521 *A.*2d 841; *N.J.S.A.* 40:55D–62a. The only aspect

of the *Riggs* standard pertinent to this case is whether the amendments to the ordinance are substantially consistent with the land-use element of the Master Plan.

The MLUL, *N.J.S.A.* 40:55D-5, defines a master plan as "a composite of one or more written or graphic proposals for the development of the municipality as set forth in and adopted pursuant to [*N.J.S.A.* 40:55D-28]." A planning board is charged with the responsibility of preparing, adopting and amending a master plan "to guide the use of lands within the municipality in a manner which protects public health and safety and promotes the general welfare." *N.J.S.A.* 40:55D-28a. A master plan must contain two elements: 1) "objectives, principles, assumptions, policies and standards upon which the constituent proposals for the physical, economic and social development of the municipality are based," and 2) "[a] land use plan element." *N.J.S.A.* 40:55D-28b. Although the statute lists a number of other elements that may be included in a master plan, they are discretionary with the municipality. Cox, *supra*, § 40-1 at 580.

■■■ The Master Plan must be examined in light of the Epicenter as a planned commercial development on contiguous acreage of the size specified by the ordinance "to be developed according to a [site] plan as a single entity containing one or more structures with appurtenant common areas to accommodate commercial or office uses or both and any residential and other uses incidental to the predominant use as may be permitted by ordinance." *N.J.S.A.* 40:55D-6. The Master Plan does not have the operative effect of a zoning ordinance. But the land-use element of the Master Plan "is required to be the basis for any zoning ordinance." Cox, *supra*, § 40-2 at 581.

Development of the Master Plan was underway before Realty's site-plan application was submitted. The Township planning consultant, Richard Cramer, initially presented the Master Plan to the Board in April 1990. The Board held a public hearing on the Master Plan on May 7, 1990, after complying with the notice requirements of *N.J.S.A.* 40:55D-13. Cramer incorporated a

number of changes recommended by both the Board and the general public and re-submitted the Master Plan to the Board in April 1991. The last public hearing was held on April 25, 1991. On May 23, 1991, further corrections were made and the Master Plan was adopted by the Board. While the Master Plan was under consideration, Home Depot was identified in Realty's October 1990 site-plan application as an anchor tenant of the proposed Epicenter. On the parcel of land immediately contiguous to the proposed Epicenter, a Channel Home Center was located for an unspecified period prior to April 1991 when the Master Plan was resubmitted to the Board.

The Master Plan identifies the C–1 district as follows: "Regional Commercial Shopping Center District located northwest of the Intersection of Craig Road and Route 9. Presently developed as the Manalapan Mall with expansion area available for mixed commercial uses." Commercial land in the Township is divided into two categories, retail and office. Retail use comprises 83.54 percent of all commercial land in the Township. The Route 9 corridor that includes the Manalapan Mall is the major shopping area on Wilson Avenue. Land use along Route 9 has developed largely as a commercial corridor.

*N.J.S.A.* 40:55D–28b(2)(b) directs that the land-use element of the Master Plan must take into account "the existing and proposed location, extent and intensity of development of land to be used in the future for varying types of ... commercial ... purposes or combination of purposes; and stating the relationship thereof to the existing and any proposed zone plan and zoning ordinance." Once the Master Plan was adopted the Township was authorized by the MLUL to amend its zoning ordinance "relating to the nature and extent of the uses of land and of buildings and structures" within the Township, but "all of the provisions of such zoning ordinance or any amendment or revision thereto shall either be substantially consistent with the land use plan element ... of the master plan or designed to effectuate such plan elements." *N.J.S.A.* 40:55D–62a.

Another provision of the MLUL authorized the Township through its zoning ordinance to "[l]imit and restrict buildings and structures ... according to their type and the nature and extent of their use...." *N.J.S.A.* 40:55D–65a. Both the majority and dissenting judges in the Appellate Division accepted the Township's statement that the purposes for amending the ordinance were to protect the general welfare by preserving the retail character of the C–1 district, to control the intensity of development, to eliminate the hazards of fire, and to eliminate impediments to pedestrian circulation. *See N.J.S.A.* 40:55D–2a, b, g, i and k. Other purposes were also stated. Those reasons establish a reasonable relationship between the amendments and the objectives of the zoning ordinance. *See also Zilinsky,* 105 *N.J.* at 371, 521 *A.*2d 841. The objectives of the ordinance amendments need not be stated in the ordinance but may be provided, as occurred here, when the ordinance is attacked. *Ibid.*

We reject Realty's and Home Depot's arguments that the amendments banning Home Depot from the C–1 district are inconsistent with the Master Plan because the Master Plan expressed no disapproval, reluctance or hesitation with respect to the application of Home Depot or the Channel Home Center located in the C–1 district when the Master Plan was adopted. The Board that prepared and adopted the Master Plan also determined pursuant to *N.J.S.A.* 40:55D–26a that the proposed zoning amendments are substantially consistent with the Master Plan. Such a determination by the Board is entitled to deference and great weight. *See In re Adoption of N.J.A.C. 7:26B,* 128 *N.J.* 442, 449–50, 608 *A.*2d 288 (1992); *Waste Management of Central Jersey, Inc. v. State,* 278 *N.J.Super.* 56, 64, 650 *A.*2d 379 (App.Div. 1994). *See also Kramer v. Board of Adj., Sea Girt,* 45 *N.J.* 268, 296–97, 212 *A.*2d 153 (1965).

The Legislature has not defined what is meant by "substantially consistent" with a master plan. "When construing legislation, in the absence of a specific definition, we give words their ordinary and well-understood meanings." *Great Atl. & Pac.*

*Tea Co. v. Borough of Point Pleasant,* 137 *N.J.* 136, 143–44, 644 *A.*2d 598 (1994); *Levin v. Township of Parsippany–Troy Hills,* 82 *N.J.* 174, 182, 411 *A.*2d 704 (1980). The only interpretation of "substantially consistent" that will not defeat the objective of the MLUL is to give these words their plain meaning. Substantial means "[h]aving substance; not imaginary, unreal, or apparent only; true, solid, real," *The Compact Oxford English Dictionary* 1947 (2d ed. 1993), or, "having real existence, not imaginary[;] firmly based, a substantial argument." *The New Lexicon Webster's Dictionary of the English Language* 987 (1987). Thus, the concept of "substantially consistent" permits some inconsistency, provided it does not substantially or materially undermine or distort the basic provisions and objectives of the Master Plan.

Realty's and Home Depot's reliance on the existence of a Channel Home Center in the C–1 zone is misplaced. Revision of the proposed master plan was started in April 1990 and the first public hearing on it was conducted in May 1990, six months before Realty's application was submitted. Under the ordinance in effect in April 1990 Channel Home Center was regarded by Cramer, the Board's senior planner, as a retail store, a permitted use under the ordinance. Thus, if Channel was a permitted use, it was protected by virtue of *N.J.S.A.* 40:55D–68, and a revision of the Master Plan or amendments ·to the ordinance could not alter its status. *See Dresner v. Carrara,* 69 *N.J.* 237, 240, 353 *A.*2d 505 (1976). In contrast, Home Depot was not operating in the C–1 district when either the Master Plan or the ordinance amendments were adopted. It therefore acquired no vested rights under *N.J.S.A.* 40:55D–68. Nor was a site-plan approval granted under the pre-amended ordinance with Home Depot as a tenant, thereby giving it a protected status by virtue of *N.J.S.A.* 40:55D–49a. Moreover, the Channel Home Center building was converted to a Grand Union supermarket, according to counsel for the Township, by the time the amendments were adopted in July 1991.

Furthermore, the amendments are not invalidated simply because traffic problems that a Home Depot may generate

could have been resolved during the site-plan stage and by strict enforcement of existing regulations rather than through zoning amendments. The judiciary cannot evaluate such a policy determination based on the private views of judges. The wisdom of a zoning ordinance or an amendment thereto "is reviewable only at the polls." *Kozesnik, supra,* 24 *N.J.* at 167, 131 *A.*2d 1; *see also Clary v. Borough of Eatontown,* 41 *N.J.Super.* 47, 69–70, 124 *A.*2d 54 (App.Div.1956). Where the validity of an ordinance is debatable, the validity of the ordinance must be upheld under the "no discernible reason" standard. *Zilinsky, supra,* 105 *N.J.* at 369, 521 *A.*2d 841; *Bow and Arrow Manor, Inc., supra,* 63 *N.J.* at 343, 307 *A.*2d 563. The amendments under consideration are at least debatable.

We agree with Professor Cox that because the land-use element of a master plan forms the basis for any zoning ordinance, it would be helpful for a master plan specifically to identify uses deemed compatible and incompatible in a particular zone. Indeed, such specificity might assume heightened importance in a commercial zone. But in reality, "planners and planning boards cannot think of everything and new uses come into existence fairly regularly." Cox, *supra,* § 40–2 at 581.

The Master Plan calls for mixed commercial uses within the C–1 district. However, "mixed" does not signify every type of commercial use, though the amended ordinance permits a variety of commercial uses. The amended ordinance prohibits the sale of lumber and large items described as "building materials." Also, the amended ordinance discourages congestion in accordance with the Master Plan. It requires the most appropriate commercial uses, and the Township Committee determined that the sale of lumber and large items of "building materials" are not appropriate commercial uses in the zone. Nor does the Master Plan purport to allow the sale of lumber or large items described as "building materials" in the zone. The decision not to permit the sale of "building materials" can serve valid zoning purposes and "cannot categorically be adjudged an arbitrary and unreasonable exercise

of the zoning power." *Zilinsky, supra,* 105 *N.J.* at 371, 521 *A.*2d 841. We are persuaded that the Appellate Division's conclusion that the amended ordinance was substantially consistent with the Master Plan is eminently correct. As the majority in the Appellate Division observed:

> The Master Plan simply designates the C–1 district as a "[r]egional commercial shopping center district ... with expansion area available for mixed commercial uses." There is no inconsistency between this designation and the exclusion of retail stores which sell lumber or other building materials. The Manalapan Mall will continue to be a "regional commercial shopping center" containing "mixed commercial uses," even though stores which sell lumber or building materials are prohibited. Indeed, the retail uses within the mall may be expanded even though this one type of business operation is prohibited.
>
> [*Manalapan Realty, supra,* 272 *N.J.Super.* at 13, 639 *A.*2d 318.]

Finally, we note that under the time of decision rule, *Lizak v. Faria,* 96 *N.J.* 482, 495, 476 *A.*2d 1189 (1984), and *Lake Shore Estates, Inc. v. Denville Township Planning Bd.,* 255 *N.J.Super.* 580, 589, 605 *A.*2d 1106 (App.Div.1991), *aff'd o.b.,* 127 *N.J.* 394, 605 *A.*2d 1073 (1992), we have examined the definition of "building materials" contained in the Development Regulations and find it satisfies the Appellate Division's over-breadth concerns. This latest definition is sufficiently precise to exclude the wholesale and/or retail sale of lumber and other bulky building materials in the C–1 district which were traditionally sold in lumberyards. Indeed, the December 14, 1994, comprehensive regulations permit lumberyards in the C–3 district, defined as general commercial. The Development Regulations also permit lumber and building materials to be sold in the Limited Business–Millhurst district. Development Regulations, *supra,* § 5.2.A, at 5–3, exhibit 5–4 at 5–40; *id.* at § 5.5.E.1.b at 5–24 to –25. We do not decide whether those regulations are otherwise valid.

Even though any new application to operate a Home Depot in the Township will be controlled by the Development Regulations, this appeal is not moot because they may be challenged also on the basis that they are not substantially consistent with the Master Plan.

The judgment of the Appellate Division is affirmed.

STEIN, J., concurring in part and dissenting in part.

This appeal as of right based on the dissent below, see *Rule* 2:2–1(a)(2), is limited to the validity of two amendments to the Manalapan Zoning Ordinance adopted in July 1991. Specifically, Judge Wefing's dissent disagreed with the Appellate Division's holding that the amendments were not arbitrary and capricious and were not substantially inconsistent with Manalapan's Master Plan. 272 *N.J.Super.* 1, 19–21, 639 *A.*2d 318 (App.Div.1994) (Wefing, J., dissenting). Although the Court's opinion acknowledges that Manalapan has subsequently adopted a new zoning ordinance that affects the substance of the two amendments implicated in this appeal, *ante* at 386, 658 *A.*2d at 1241, the Court does not address adequately the likelihood that the issues before us are partially or entirely moot.

I write separately to express my concern about the appropriateness of the Court's determination to decide and uphold in their entirety the validity of amendments to the Township of Manalapan's (Township) zoning ordinance that have since been superseded. Those amendments no longer will control the application by Home Depot USA, Inc. (Home Depot) to erect a home improvement center in the Township's C–1 regional commercial shopping-center district, which is what provoked this litigation in the first place. Indeed, as the Court's opinion observes, *ante* at 386, 658 *A.*2d at 1241, the most recent amendments to the Township's zoning ordinance, which under the time-of-decision rule, *Lizak v. Faria,* 96 *N.J.* 482, 495, 476 *A.*2d 1189 (1984), will determine the outcome of Home Depot's application, not only address the issue of arbitrariness and overbreadth that divided the Appellate Division panel, but also appear specifically to authorize Home Depot's proposed use in a zoning district other than the C–1 district. In other respects the most recent ordinance is more restrictive. Specifically, the Ordinance's Schedule of Permitted Uses prohibits the operation of forklifts to load customer vehicles by any retail store in the C–1 zone, Manalapan Development Regulations, at 5–

39 (Dec. 14, 1994), a provision that may directly affect the proposed Home Depot store.

We have often emphasized that the doctrine of mootness does not deprive the Court of the jurisdiction or obligation to decide issues that substantially affect the public interest. *See Busik v. Levine,* 63 *N.J.* 351, 363–64, 307 *A.*2d 571 (1973). To the extent that this appeal encompasses such an issue, it might be framed as the extent of a municipality's zoning power to exclude from a general-retail zoning district uses such as a Home Depot that engage in a "warehouse format of selling," a merchandising format significantly different from the operational methods used by conventional retail establishments. *Cf. Lusardi v. Curtis Point Property Owners Ass'n,* 86 *N.J.* 217, 227, 430 *A.*2d 881 (1981) ("Ordinarily municipal officials have wide discretion in determining what uses are suitable for each district, and they need not provide for a particular use in a specified vicinity or for every appropriate use within the borders of the municipality.") In my view, however, the public-interest exception to the general rule requiring dismissal of moot appeals does not justify the Court's decision to consider and uphold the validity of the superseded amendments to the Manalapan zoning ordinance, an issue that not only is debatable but is no longer determinative of Home Depot's application.

I

That this appeal is moot can be demonstrated by reference to the underlying facts and procedural history. In October 1990, Manalapan Realty, L.P. (Realty) applied to the Township's Planning Board for approval of a site plan contemplating a substantial expansion of its existing shopping mall located in Manalapan's C–1 regional-commercial shopping-center district. The expanded mall was to include a number of anchor stores, one of which was to be a home-improvement center operated by Home Depot. Although "[r]etail stores, shops and markets" were then among the permitted uses in the C–1 district, opponents of Home Depot's inclusion in the plan contended that that proposed use was a "warehouse"

rather than a retail store. Prompted by strong public opposition to the Home Depot proposal, the Township adopted two amendments to the zoning ordinance in July 1991. One amendment excluded from the definition of "[r]etail stores" in the C–1 zone any "establishment engaged in the sale of lumber or building materials or storing, displaying, or selling materials outside a completely enclosed building." Manalapan Code § 130–94. The other amendment defined the term "building materials" as

[m]aterials that can be arranged, united or joined to construct a building or structure. Such materials include, but are not limited to, rough or dressed lumber, millwork, roofing, shingles, wallboard, molding, plywood, sheetrock, bricks, doors, windows, paneling, concrete block, tiles, cabinets, or plumbing fixtures.
[Manalapan Code § 130–52.]

Prior to their adoption, the Township Planning Board determined that the amendments were substantially consistent with the Township's Master Plan, which had been adopted shortly before enactment of the amendments.

Because the amendments effectively prohibited the proposed Home Depot use in the C–1 zone, Realty deleted the Home Depot store from its site plan, which was then preliminarily approved by the Planning Board in September 1991. Simultaneously, Realty filed suit challenging the validity of the two amendments to the zoning ordinance, and shortly thereafter filed a second suit challenging the Planning Board's failure to resolve whether Home Depot was a permitted use in the C–1 district prior to enactment of the two amendments. The Law Division consolidated the two actions. After a trial, the Law Division invalidated both amendments on the ground that they were arbitrary and capricious, and also determined that Home Depot was a permitted use in the C–1 district under the ordinance in effect prior to the amendments.

As the Court's opinion explains, *ante* at 376–377, 658 *A.*2d at 1235–1236, the Township and Planning Board appealed to the Appellate Division in November 1992 from the Law Division's judgment entered October 16, 1992. (Cross-appeals concerning counsel fees were filed by Realty and Home Depot.) While the appeals were pending in the Appellate Division, the Planning

Board in December 1993 denied Realty's final site-plan-approval application that included the proposed Home Depot store. No stay of the trial court's judgment having been obtained, Realty and Home Depot applied to the Law Division, purportedly pursuant to *Rule* 1:10–3, for relief in aid of litigant's rights. On February 18, 1994, the Law Division issued a written opinion in which it determined that the Planning Board's denial of site-plan approval was inconsistent with its judgment invalidating the two amendments to the Manalapan zoning ordinance. The Law Division ordered that Realty's application for final site-plan approval, including the Home Depot store, be approved. The effective date of the Law Division's order was March 16, 1994, *see R.* 4:47, two days after the date of the Appellate Division's judgment reversing the Law Division and upholding the validity of the two amendments.

The Court questions, but does not decide, whether the Law Division had jurisdiction to enter the order of March 16, 1994. Ante at 376–77, 658 *A*.2d at 1236. If the Law Division's order were to constitute a valid exercise of that court's jurisdiction, this appeal would not be moot; a decision by this Court reversing the Appellate Division would in that circumstance have the effect of reinstating the Law Division's order granting final site-plan approval, which would have protected the applicant from zoning-ordinance amendments for two years from the effective date of site-plan approval. *N.J.S.A.* 40:55D–52.

*Rule* 2:9–1(a) controls proceedings on appeal prior to their disposition and provides:

> Except as otherwise provided by R. 2:9–3, 2:9–4 (bail), 2:9–5 (stay pending appeal), 2:9–7 and 3:21–10(d), the supervision and control of the proceedings on appeal or certification shall be in the appellate court from the time the appeal is taken or the notice of petition for certification filed. The trial court, however, shall have continuing jurisdiction to enforce judgments and orders pursuant to R. 1:10 and as otherwise provided. The appellate court may at any time entertain a motion for directions to the court or courts or agencies below or to modify or vacate any order made by such courts or agencies or by any judge below.

Accordingly, "[e]xcept to the extent of enforcement and except as otherwise expressly provided for by rule, the ordinary effect of the filing of the notice of appeal is to deprive the court below of

jurisdiction to act further in the matter under appeal unless directed to do so by the appellate court." Pressler, *Current N.J. Court Rules,* comment 1 on *R.* 2:9–1(a) (1995). The obvious purpose of the Rules is to protect the subject matter of the appeal from adverse action by any inferior court until the appeal has been decided. Although limited by subsequent decisions, the Court of Errors and Appeals opinion in *Pennsylvania Railroad Co. v. National Docks & New Jersey Junction Connecting Railway Co.,* 54 *N.J.Eq.* 647, 35 *A.* 433 (1896), set forth the basic principle:

The entire purpose and object of the appeal is to preserve such rights and property from the ill effects of the decision that is challenged. * * * In fine, the very essence of the remedy by appeal is to prevent, for the time being, the appellant from this execution of the existing decree * * *. A decree cannot be used detrimentally to the appellant, pending appeal, for the plain reason that such a use will, for every practical purpose, defeat the appellate procedure.

[*Id.* at 653, 35 *A.* 433.]

*Ashby v. Yetter,* 78 *N.J. Eq.* 173, 78 *A.* 799 (Ch. 1911), which acknowledged that the *National Docks* holding had been qualified by later cases, *id.* at 176–83, 78 *A.* 799, nevertheless reaffirmed that no order could be entered by a lower court pending appeal "that would destroy or impair the subject of the appeal." *Id.* at 188, 78 *A.* 799. The more recent decisions appear to approve of or be consistent with the *Ashby* court's formulation. *See, e.g., In re Plainfield–Union Water Co.,* 14 *N.J.* 296, 302, 102 *A.*2d 1 (1954); *Rolnick v. Rolnick,* 262 *N.J.Super.* 343, 365–67, 621 *A.*2d 37 (App.Div.1993); *Carlucci v. Carlucci,* 265 *N.J.Super.* 333, 335–43, 626 *A.*2d 1124 (Ch.Div.1993); *Morrison v. Morrison,* 93 *N.J.Super.* 96, 100–04, 225 *A.*2d 19 (Ch.Div.1966); *see also North Bergen Action Group v. North Bergen Township Planning Bd.,* 122 *N.J.* 567, 574, 585 *A.*2d 939 (1991) (observing that where appellant appealed to Appellate Division from Law Division holding that Planning Board lacked authority to grant height variances and simultaneously applied to Board of Adjustment for same height variances, Appellate Division possessed inherent authority to restrain Board of Adjustment proceeding).

The Law Division unquestionably lacked jurisdiction to issue an order granting final site-plan approval to a plan that included the

Home Depot store because the validity of that order depended on the correctness of the Law Division's prior ruling invalidating the two amendments to the Manalapan zoning ordinance, the very issue that was pending on appeal before the Appellate Division. The Law Division's order granting site-plan approval, if it were valid when issued, would significantly have "impair[ed] the subject [matter] of the appeal," *Ashby, supra,* 78 *N.J.Eq.* at 188, 78 *A.* 799, not only because it would have substantially advanced the approval process but because it would have protected Realty against future zoning amendments. *N.J.S.A.* 40:55D–52.

Nor did the provision in *Rule* 2:9–1(a) granting to a trial court "continuing jurisdiction to enforce judgments and orders pursuant to R. 1:10 and as otherwise provided" authorize the Law Division to enter an order granting site-plan approval while the appeal was pending. *Rule* 1:10 is entitled "Contempt of Court and Enforcement of Litigants' Rights Related Thereto," and *Rule* 1:10–3 provides: "Notwithstanding that an act or omission may also constitute a contempt of court, a litigant in any action may seek relief by application in the action." Although the Law Division characterized Realty's application as "a motion to enforce litigant's rights," that characterization plainly was erroneous. The motion to enforce litigant's rights described in *Rule* 1:10–3 is addressed to a court's "inherent right to invoke coercive measures designed to compel a recalcitrant party to comply with a court order." *S.S. v. E.S.,* 243 *N.J.Super.* 1, 8, 578 *A.*2d 381 (App.Div.1990). A proceeding to enforce litigant's rights "is essentially a civil proceeding to coerce the defendant into compliance with the court's order for the benefit of the private litigant. In such proceeding the judge, before ordering any sanction, must determine that defendant has the ability to comply with the order [that] he has violated * * *." *Essex County Welfare Bd. v. Perkins,* 133 *N.J.Super.* 189, 195, 336 *A.*2d 16 (App.Div.1975).

The Law Division's purported exercise of its power pending appeal to grant relief in aid of litigant's rights pursuant to *Rule* 1:10–3 was manifestly inappropriate. Neither the Township nor

its Planning Board failed to comply with the court's prior order. That order simply declared invalid the two zoning amendments, and further declared that Home Depot was a permitted use under the prior ordinance. The validity of that order was the issue pending on appeal before the Appellate Division. Having filed a notice of appeal from the Law Division's order, the Planning Board could not properly have granted site-plan approval to Home Depot without directly interfering with the subject of its own appeal. The Law Division's attempted exercise of its *Rule* 1:10–3 power to compel the grant of site-plan approval was a nullity because the pendency of the appeal divested the Law Division of jurisdiction to take any action inconsistent with preserving the issues on appeal.

## II

The Court appears to acknowledge that based on the time-of-decision rule, *Lizak, supra,* 96 *N.J.* at 495, 476 *A.*2d 1189, the zoning ordinance amendments adopted by the Township in December 1994, rather than the amendments upheld by the Appellate Division, will determine the eventual outcome of Home Depot's application. *Ante* at 386, 658 *A.*2d at 1241. The validity of the most recent amendments is not before us, but their substantive content constitutes an added reason why the Court should exercise caution in its evaluation of the validity of the two original amendments.

The first of the original amendments redefined the permitted uses in the C–1 zone to exclude "establishment[s] engaged in the sale of lumber or building materials or storing, displaying, or selling materials outside a completely enclosed building." Manalapan Code § 130.94. The Court now holds that amendment is substantially consistent with Manalapan's Master Plan, adopting the Appellate Division's conclusion that "[t]here is no inconsistency between this designation [of the C–1 zone as a regional shopping-center district] and the exclusion of retail stores [that] sell lumber or other building materials." *Ante* at 386, 658 *A.*2d at 1240 (quoting 272 *N.J.Super.* at 13, 639 *A.*2d 318). I agree with

the Court's reasoning on that specific issue. Arguably, the Court's disposition of the issue of consistency with the Master Plan would be relevant as well to Manalapan's latest zoning ordinance, which retains the same exclusion in the description of permitted uses in the C–1 zone. However, as noted, the latest ordinance also prohibits the use of forklifts to load customer vehicles in the C–1 zone, permits the sale of lumber and building materials in the Limited Business–Millhurst District, and permits lumberyards to be located in the C–3 district. Manalapan Development Regulations, *supra*, at 5–39, 5–25, 5–40. Accordingly, that the question of the most recent ordinance's consistency with the Master Plan may pose questions different in context from the one resolved by the Court is not unlikely. For example, the question posed by the latest amendments might encompass whether permitting the sale of building materials in the Limited Business–Millhurst District—described in the Master Plan as "a place of early settlement in Manalapan * * * [that] contains some landmark buildings and lies between the rural and corridor areas of the township"—is reconcilable and consistent with the Township's Master Plan.

The second of the original amendments prohibited the sale of "building materials" in the C–1 zone, defined to include not only typical structural materials such as lumber, roofing, sheetrock, bricks and concrete block but "tiles, cabinets, or plumbing fixtures." The Appellate Division majority, expressing concern that the inclusion of tiles, cabinets, and plumbing fixtures rendered the ordinance overbroad, remanded the matter to the trial court to take testimony on that issue. 272 *N.J.Super.* at 14–15, 639 *A.*2d 318. The dissenting member, observing that the ordinance would prohibit (or render non-conforming) in the C–1 zone even a small store selling ceramic tile or kitchen cabinets, opposed the remand, noting with approval the trial court's conclusion that "there was no rational relationship between the ordinance amendments and the alleged evils sought to be addressed." *Id.* at 20, 639 *A.*2d 318. Addressing the Township's concerns over truck traffic and safety hazards, Judge Wefing observed that those serious concerns were

not addressed, however, by an ordinance which bans the sale of faucets or tiles. If the Township wishes to address and alleviate those concerns, it should do so by an ordinance which focuses upon those problems, rather than an outright ban of the sale of certain prescribed goods in the area it has denominated as appropriate for regional commercial shopping centers.

[*Id.* at 20–21, 639 *A.*2d 318.]

The December 1994 amendments, however, redefine building materials to eliminate any reference to "tiles, cabinets, or plumbing fixtures," the very items in the original amended ordinance that prompted the Appellate Division majority to order a remand and persuaded the dissenting member that the ordinance was arbitrary. Without expressing any view on the validity of the original amendments to the Manalapan zoning ordinance, I note that perhaps their most vulnerable aspect has been addressed by the Township's latest amendments. Our zoning cases have consistently required a substantial connection between a municipality's zoning objectives and the means chosen to achieve them. "The restrictions placed on the land use must be justified by the legitimate purpose sought to be accomplished and the means used to attain that purpose must be reasonably related to accomplishing it." *McNeill v. Township of Plumsted,* 215 *N.J.Super.* 532, 537, 522 *A.*2d 469 (App.Div.1987). Although the "goal sought to be furthered by that provision is entirely legitimate, the means chosen [must] bear a substantial relationship to the effectuation of that goal." *State v. Baker,* 81 *N.J.* 99, 103, 405 *A.*2d 368 (1979). "Although some arbitrariness in line-drawing may be countenanced when necessary to achieve a legitimate goal, it is not to be tolerated where, as here, more precise methods of reaching the desired end are available." *Id.* at 107 n. 1, 405 *A.*2d 368. We considered an analogous issue in *Baker, supra,* involving a local zoning ordinance that sought to preserve the "family" character of a neighborhood by prohibiting more than four unrelated persons from sharing a single housing unit. In invalidating the ordinance on the ground that the ordinance did not bear a sufficient relationship to the zoning purpose, we observed:

The fatal flaw in attempting to maintain a stable residential neighborhood through the use of criteria based upon biological or legal relationships is that such

classifications operate to prohibit a plethora of uses which pose no threat to the accomplishment of the end sought to be achieved. Moreover, such a classification system legitimizes many uses which defeat that goal. Plainfield's ordinance, for example, would prohibit a group of five unrelated "widows, widowers, older spinsters or bachelors—or even of judges" from residing in a single unit within the municipality. On the other hand, a group consisting of 10 distant cousins could so reside without violating the ordinance. Thus the ordinance distinguishes between acceptable and prohibited uses on grounds which may, in many cases, have no rational relationship to the problem sought to be ameliorated.

[*Id.* at 107, 405 *A.*2d 368 (citation and footnote omitted).]

The dissenting member in the Appellate Division advanced a similar objection to the original amendments in observing that the Township, in an effort to exclude Home Depot from the C–1 zone, had also prohibited or rendered non-conforming uses that were entirely appropriate in that zone. 272 *N.J.Super.* at 19–20, 639 *A.*2d 318 (Wefing, J., dissenting). That Manalapan has addressed that specific problem by narrowing the definition of building materials in its latest zoning amendments suggests that the Court would be well advised to resist the temptation to resolve the validity of the original amendments.

I would dismiss the appeal as moot.

*For affirmance*—Chief Justice WILENTZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI and COLEMAN—6.

*Concurring in part; dissenting in part*—Justice STEIN—1.