NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3128-13T1

PREETI GUNDECHA,

    Appellant,

v.

BOARD OF REVIEW and
DB SERVICES NEW JERSEY, INC.,

    Respondents.

_____

APPROVED FOR PUBLICATION

June 26, 2015

APPELLATE DIVISION

Submitted May 12, 2015 — Decided June 26, 2015

Before Judges Reisner, Higbee, and Currier.

On appeal from the Board of Review, Department of Labor and Workforce Development, Docket No. 417,546.

Preeti Gundecha, appellant pro se.

John J. Hoffman, Acting Attorney General, attorney for respondent Board of Review (Lewis A. Scheindlin, Assistant Attorney General, of counsel; Robert M. Strang, Deputy Attorney General, on the brief).

Respondent DB Services New Jersey, Inc., has not filed a brief.

The opinion of the court was delivered by

CURRIER, J.S.C. (temporarily assigned).

In this case of first impression, claimant Preeti Gundecha

(Gundecha) appeals from the February 18, 2014 final decision of

the Board of Review (Board) affirming the decision of the Appeal Tribunal denying her claim for New Jersey unemployment benefits pursuant to N.J.S.A. 43:21-19(i)(2). We affirm, because although Gundecha was employed by the company's New Jersey office, she performed all of her work in North Carolina. Therefore, she was entitled to unemployment benefits in North Carolina, not New Jersey.

Gundecha began working for Deutsche Bank (DB) in 1999. After working briefly in DB's London office, she was transferred to New York and worked there until 2007. In 2008 Gundecha began working in a New Jersey office but left on maternity leave in April 2009. The next month she moved to North Carolina. She remained on maternity leave until December 2009. At that time, Gundecha returned to work for DB, telecommuting out of her home in North Carolina. She worked in that manner throughout 2010.

In January 2011 Gundecha became ill and was unable to work for the next eighteen months. She was released by her doctor to return to work in July 2012. She was laid off by DB in September 2012 and given a year of severance pay.

In February 2013 Gundecha applied to New Jersey for unemployment benefits.[1] Her claim was denied. Claimant

---

[1] Claimant alleges that she contacted the North Carolina Department of Labor and checked its website in September 2012

appealed the agency's determination. After a telephone interview, the Appeal Tribunal affirmed the prior decision noting that claimant had not established the required base weeks or earnings within New Jersey and was therefore not eligible for benefits under N.J.A.C. 12:17-5.1.

Gundecha appealed the Tribunal's decision on the grounds that she had followed the instructions she had received from a North Carolina representative to file for benefits in New Jersey. The Board remanded the matter to the Appeal Tribunal "for additional testimony from the claimant . . . as to whether the claimant's services were localized in the state of New Jersey or in the state of North Carolina . . . ."

Gundecha participated in a second telephone hearing, following which the Appeal Tribunal rendered its decision. Citing to N.J.S.A. 43:21-19 and the definition of "employment" therein, the Tribunal found that "claimant worked most recently for the above named employer [DB] out of her residence in North Carolina as a project manager from 12/2009 until 1/28/11. The claimant's regular work was in North Carolina. Therefore, the employee's service was localized in North Carolina, the

_____

(continued)
after being laid off. She states she was told that she had to wait for her severance benefits to be exhausted before she could file for unemployment benefits and that she should apply for benefits in New Jersey.

claimant's work was not in [']employment['] in accordance with N.J.S.A. 43:21-19(i)(2) and the claim dated 2/17/13 is invalid."[2] Gundecha appealed from that decision, and on February 18, 2014, the Board affirmed the decision of the Appeal Tribunal. This appeal followed.

On appeal, Gundecha argues that she was employed by a New Jersey company and therefore should be considered a New Jersey employee for purposes of unemployment benefits. She states she was temporarily telecommuting from North Carolina and intended to return to physically work in New Jersey.[3]

Our review of legal issues is de novo. Manalapan Realty, L.P. v. Twp. Comm., 140 N.J. 366, 378 (1995). However, we generally defer to an agency's reasonable interpretation of its enabling statute. See GE Solid State, Inc. v. Dir., Div. of Taxation, 132 N.J. 298, 306 (1993); SJC Builders, LLC v. N.J. Dep't of Envirl. Prot., 378 N.J. Super. 50, 54 (App. Div. 2005).

Historically, Congress encouraged the states to create their own unemployment systems when it passed the Social Security Act in 1935. In response, states set up systems where

---

[2] The Appeal Tribunal also considered whether claimant qualified for benefits under the alternate base year after disability option but determined she did not under the same statutory analysis. N.J.S.A. 43:21-19(c)(2).

[3] As of the time she filed her appeal, claimant continued to reside in North Carolina.

employers contribute to the states' unemployment funds and under the Federal Unemployment Tax Act, the excise tax paid by an employer to a state unemployment fund is credited toward the employer's tax liability. Beverly Reyes, Note, <u>Telecommuters and Their Virtual Existence in the Unemployment World</u>, 33 <u>Hofstra L. Rev.</u> 785, 789 (2004).

As the systems expanded, it became important for uniform definitions to be used throughout the nation on the theory that only one state would be liable for a claimant's unemployment compensation benefits. <u>Vale v. Gaylords Nat'l Corp.</u>, 127 <u>N.J. Super.</u> 45, 47 (App. Div. 1974). A uniform definition of "employment" was ultimately adopted by forty-six states (including New Jersey) and the District of Columbia. Reyes, <u>supra</u>, 33 <u>Hofstra L. Rev.</u> at 790. That definition remains in effect today in <u>N.J.S.A.</u> 43:21-19(i)(2).

<u>N.J.S.A.</u> 43:21-19 requires that a claimant have employment in New Jersey to be eligible for benefits. "Employment" is defined at Section 43:21-19(i)(2) as:

> [A]n individual's entire service performed within or both within and without this State if:
>
> (A) The service is localized in this State; or
>
> (B) The service is not localized in any state but some of the service is performed in this State, and (i) the base of

operations, or, if there is no base of operations, then the place from which such services is directed or controlled, is in this State; or (ii) the base of operations or place from which such service is directed or controlled is not in any state in which some part of the service is performed, but the individual's residence is in this State.

[N.J.S.A. 43:21-19(i)(2).]

The statute thus contains four tests to be applied successively to determine the appropriate state for the filing of unemployment benefits. The first test is the localization test. It is defined at N.J.S.A. 43:21-19(i)(5) as:

[s]ervice shall be deemed to be localized within a state if:

(A) The service is performed entirely within such state; or

(B) The service is performed both within and without such state, but the service performed without such state is incidental to the individual's service within the state; for example, is temporary or transitory in nature or consists of isolated transactions.

[Ibid.]

If the first test reveals a single state in which the services are performed, then the state unemployment agency need not apply the other tests. See Vale, supra, 127 N.J. Super. at 48.

Thus, the primary issue before us is whether claimant's services were "localized" in New Jersey. New Jersey courts have

not considered the "localization" requirement in over forty years. See Vale, supra, 127 N.J. Super. 45. Telecommuting was not a part of the employment landscape until recently but it has become a normal way of working for many employees.[4] Thus, the issue before us is how the localization rule should be applied to telecommuters.

One jurisdiction that has addressed the issue of "localization" as it respects telecommuters is New York. In In re Claim of Allen, 794 N.E. 2d 18 (N.Y. 2003), a case with similar circumstances, the claimant employee worked in the employer's New York office for several years. When she relocated to Florida she was permitted to "telecommute" to her office in New York. After her employer ended the telecommuting arrangement, the claimant filed for unemployment benefits in New York.

The New York court applied the localization test and held that "physical presence determines localization for purposes of

---

[4] Between 2005 and 2010 there was an increase in home-based work. "During this time, the number of home-based workers went from 7.8 percent of all workers to 9.5 percent, an increase of about 2 million." Peter J. Mateyka, Melanie A. Rapino, and Liana Christin Landivar, Home-based Workers in the United States: 2010, U.S. Census Bureau 3 (2012), available at http://www.census.gov/prod/2012pubs/p70-132.pdf.

interpreting and applying Section 511[5] to an interstate telecommuter. Because the claimant was regularly physically present in Florida when she worked for her employer in New York, her work was localized in one state — Florida." Id. at 22. Accordingly the claimant was found ineligible for unemployment benefits from New York.

As was explained by the New York Court of Appeals, "the uniform rule was intended to promote efficiency, and to ensure that unemployment benefits are paid by the state where an unemployed individual is physically present to seek new work. Unemployment has the greatest economic impact on the community in which the unemployed individual resides . . . . In our view, physical presence is the most practicable indicium of localization for the interstate telecommuter who inhabits today's 'virtual' workplace linked by Internet connections and data exchanges." Ibid. We agree.

The localization rule continues to be the simplest and most efficient method for determining jurisdiction for unemployment benefits. And despite the modern technology advances that could not have been imagined when the states adopted the localization test, the theory behind the definition of "employment" still holds true today. It remains feasible and most practicable for

---

[5] This is identical to N.J.S.A. 43:21-19(i)(2).

the employee's physical presence to be the determinative factor in determining "localization." It continues to be a straightforward solution for an employee to know where to file for benefits and for each state to know its responsibilities. Of course, if the employee's service does not fit within the definition, the remaining tests set forth in the statute are analyzed. See Vale, supra, 127 N.J. Super. at 48.

In this case claimant lives in North Carolina. Although she was employed by and provided services to the DB office located in New Jersey, she was physically present in North Carolina at all times that she was working. Therefore her work and employment was localized in North Carolina and that is the state responsible for her benefits.

If claimant was given advice by North Carolina's Labor Department that she should pursue her benefits in New Jersey that advice was incorrect. Gundecha must pursue her remedies in North Carolina. We find that the Board's decision holding claimant ineligible for unemployment benefits under N.J.S.A. 43-21-19(i)(2) is correct.

We affirm.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3128-13T1