# **RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2816-16T3

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

    Plaintiff-Respondent,

v.

M.N.R.,[1]

    Defendant-Appellant.

_____

IN THE MATTER OF THE GUARDIANSHIP
OF Z.I.R.,

    A Minor.

_____

        Submitted January 31, 2018 — Decided July 26, 2018

        Before Judges Fuentes, Koblitz and Manahan.

        On appeal from Superior Court of New Jersey,
        Chancery Division, Family Part, Essex County,
        Docket No. FG-07-0220-16.

        Joseph E. Krakora, Public Defender, attorney
        for appellant M.N.R. (Daniel DiLella,
        Designated Counsel, on the brief).

---

[1] We use initials and pseudonyms to identify the parties to preserve the confidentiality of these proceedings. R. 1:38-3(d)(12).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason W. Rockwell, Assistant Attorney General, of counsel; Michelle Cort-Hourie, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor Z.I.R. (Melissa R. Vance, Assistant Deputy Public Defender, on the brief).

PER CURIAM

Defendant M.N.R. (Maureen) is the biological mother of Z.I.R. (Zoe), a little girl now three years old. Defendant appeals from an order entered by the Family Part terminating her parental rights to Zoe.[2] The Division of Child Protection and Permanency (Division) first became involved in Maureen's life when she herself was a child. The Division was compelled to act and protect Maureen from the harm caused by her mother's serious substance abuse problem.

Unfortunately, Maureen's quality of life and ability to parent her own children has been significantly impaired by her mental illness, which she has steadfastly refused to address and treat. Maureen has had five children including Zoe. She has been

---

[2] Defendant did not identify Zoe's biological father and "consistently refused to disclose [his] name or any contact information[. ]" Pursuant to N.J.S.A. 30:4C-17(c), the Family Part waived the need to provide services to this unknown individual.

A-2816-16T3

unable to care for or parent any of them. She is homeless, unemployed, and refuses to comply with the medical treatment prescribed by the healthcare professionals who have diagnosed her mental illness. The Division's involvement that led to this guardianship trial began when Maureen's youngest child Zoe was five months old.

An administrative law judge (ALJ) notified the Division that Maureen reacted in a highly disruptive manner when she was informed that her public assistance and subsidized housing had been terminated. After investigating the matter, the Division executed an emergency Dodd removal[3] of Zoe. The child was placed in a resource home where she continues to reside; her resource parent is willing and ready to adopt her.

On December 26, 2014, the Division filed a verified complaint and order to show cause seeking the physical and legal custody of Zoe under N.J.S.A. 9:6-8.21 and N.J.S.A. 30:4C-12.1. On February 9, 2015, on the return on the order to show cause, the Family Part awarded the Division physical and legal custody of Zoe based on defendant's long history with the Division, her serious mental

---

[3] "A 'Dodd removal' refers to the emergency removal of a child from the home without a court order, pursuant to the Dodd Act, which, as amended, is found at N.J.S.A. 9:6-8.21 to -8.82. The Act was authored by former Senate President Frank J. 'Pat' Dodd in 1974." N.J. Div. of Youth & Family Servs. v. N.S., 412 N.J. Super. 593, 609 n.2 (App. Div. 2010).

A-2816-16T3

health problems, and unstable housing situation. At a fact-finding hearing held on April 14, 2015, the court found:

> [Maureen] has a long history with the Division due to her refusal to comply with treatment for her mental health diagnoses. This history includes a substantiation in 2010 for neglect due to her lack of mental health services, and the termination of her parental rights to two children and the kinship legal guardianship of a third. The [c]ourt takes judicial notice of . . . court documents from litigation regarding [Maureen's] other children. During the most recent investigation, [Maureen] again admitted she had been diagnosed with bipolar disorder, but that she had not taken her prescribed medication nor complied with therapy since at least 2008. When the Division attempted to remove [Zoe] from her care, [Maureen] became agitated and the police had to be called to assist. [Maureen] attempted to remove [Zoe's] clothes and did not recognize [Zoe's] need to be warmly dressed for the cold December weather. During the [fact-finding] trial today, [Maureen] again tried to justify her attempts to remove the child's clothing during the removal. By her continued lack of treatment for her acknowledged mental health diagnoses, [Maureen] failed to exercise a minimum degree of care and placed [Zoe] at a substantial risk of harm. In addition, [Maureen's] history with the Division, and prior court findings that she was unable to care for her children due to untreated mental health diagnoses, further supports a finding that any child would be at risk of harm in her care.

Defendant did not appeal the Family Part's order finding she had abused or neglected Zoe.

After more than a year of active involvement with defendant and her family, which included the provision of extensive services, the Division commenced this guardianship action seeking the termination of defendant's parental rights over Zoe. The matter was tried before Judge David B. Katz over four non-sequential days starting on January 4, 2017 and ending on January 17, 2017.

The Division presented expert witnesses who testified that despite the variety of services provided to Maureen, which included counseling, psychiatric evaluations, psychological evaluations, parenting skills classes, family team meetings, supervised visitation, and transportation, she was still not capable of providing Zoe with a safe parenting environment. These witnesses also testified that Zoe was closely bonded to her resource parent, the child would suffer severe and enduring psychological and emotional harm if that relationship were severed, and termination of Maureen's parental rights would not do more harm than good. On February 23, 2017, Judge Katz delivered an oral opinion from the bench stating the factual findings and conclusions of law that warranted the termination of defendant's parental rights over Zoe.

On appeal, Maureen argues the trial judge erred by finding the Division established, by clear and convincing evidence, all four statutory prongs of N.J.S.A. 30:4C-15.1(a). We disagree and affirm substantially for the reasons expressed by Judge Katz in

his comprehensive oral opinion. Although parents have a fundamental constitutional right to raise their children, N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 553 (2014), that right is "tempered by the State's parens patriae responsibility to protect children." N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 447 (2012). It is the court's duty to intervene and protect children when they are exposed to a physically hazardous environment or their psychological well-being is seriously endangered by a neglectful or abusive parent. Ibid. "The best-interests-of-the-child standard codified at N.J.S.A. 30:4C-15.1(a) 'aims to achieve the appropriate balance between parental rights and the State's parens patriae responsibility.'" R.G., 217 N.J. at 554 (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 280 (2007)).

The scope of an appellate court's review of the trial court's decision to terminate parental rights is limited. R.G., 217 N.J. at 552. "[T]he trial court's factual findings should be upheld when supported by adequate, substantial, and credible evidence." Ibid. "Concomitantly, reviewing courts should defer to the trial court's credibility determinations." Ibid. "Moreover, by virtue of its specific jurisdiction, the Family Part 'possess[es] special expertise in the field of domestic relations' and thus 'appellate courts should accord deference to [F]amily [Part] factfinding.'"

<u>Id.</u> at 553 (quoting <u>Cesare v. Cesare</u>, 154 N.J. 394, 412-13 (1998)). However, "'[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference.'" <u>Id.</u> at 552 (quoting <u>Manalapan Realty v. Manalapan Twp. Comm.</u>, 140 N.J. 366, 378 (1995)).

Here, the Division presented overwhelming evidence establishing, by clear and convincing evidence, that termination of defendant's parental rights over Zoe is warranted under the standard codified in N.J.S.A. 30:4C-15.1(a). The expert witnesses presented by the Division testified that despite the services provided to Maureen, she was still not capable of providing a safe parenting environment for Zoe. These witnesses also testified that Zoe has closely bonded to her resource parent; severing this relationship would cause severe and enduring emotional and psychological harm to the child. Finally, the record supports Judge Katz's finding that termination of parental rights would not do more harm than good.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

7                                                          A-2816-16T3