# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2460-16T3

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

G.M. and D.M.,

     Defendants,

and

M.S.,

     Defendant-Appellant.

_____

IN THE MATTER OF M.M. and S.S.,

     Minors.

_____

Submitted September 18, 2018 – Decided February 11, 2019

Before Judges Ostrer and Mayer.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FN-02-0170-16.

Joseph E. Krakora, Public Defender, attorney for appellant (Beth A. Hahn, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason W. Rockwell, Assistant Attorney General, of counsel; David G. Futterman, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Christopher A. Huling, Designated Counsel, on the brief).

PER CURIAM

Defendant M.S. (Martin)[1] appeals from the Family Part's July 28, 2016 fact-finding order, finding that he abused or neglected his then nine-year-old stepdaughter, M.M. (Maria). The judge concluded that Martin physically abused Maria by committing an act of excessive corporal punishment under N.J.S.A. 9:6-8.21(c)(4). Maria locked her younger sister, S.S. (Sarina), in the bathroom while preparing for school. Martin asked Maria to apologize to Sarina. When Maria refused to do so to Martin's satisfaction, he grabbed Maria's

---

[1] For the reader's convenience, we use pseudonyms for the named parties.

hand out of frustration and slammed it down on a table. Maria received treatment for her injured finger at a hospital.

Defendant contends the court misapplied governing law and reached unsupported findings of fact. The Law Guardian supports the Division of Child Protection and Permanency (Division) in opposing the appeal. We conclude that the trial court reached fact findings supported by the record and considered relevant facts in its analysis of the totality of circumstances. Any fact-finding errors were harmless. We therefore affirm.

I.

The sole witness at the fact-finding hearing was Luis Bustamante, the Division worker who investigated the matter and interviewed, or observed interviews of, defendant, his daughters and wife. The Division introduced into evidence the screening and investigation summaries, but the court excluded "embedded hearsay." The Division also introduced a photograph of Maria with her fingers and wrist bandaged. We discern the following facts from this record.

Martin and G.M. (Graciela) had been married for two years and lived together with Maria and Sarina as a family. Maria's father, D.M., lived out of town and was no longer substantially involved in Maria's life. Sarina, Martin and Graciela's biological daughter, was four-years old at the time of the incident.

3

Both parents were employed. Martin worked thirteen-hour days, six days a week, including a morning shift at one restaurant, and a night shift at another. Graciela was a school bus driver and left for work before Martin, who helped prepare the kids for school each morning.

On December 23, 2015, the children were in the bathroom getting ready for school. As Maria left the bathroom, she shut the door on Sarina. The bathroom door was difficult to open. Sarina could not get out and she cried. Martin yelled at Maria and helped Sarina out of the bathroom. The three went to the kitchen table to eat breakfast together. Sarina asked Maria for an apology, which did not come. Martin seconded Sarina's request. Maria did not apologize and Martin became frustrated with her.

Martin grabbed Maria's left hand and pulled it down on the table with force, injuring Maria's pinky. Maria called her mom to report the incident. Maria complained that her hand hurt and that she did not want to go to school. Maria called her mom a second time and told her that Martin hurt her hand. Graciela convinced Maria to go to school.

At school, Maria told her teacher. The school nurse looked at Maria's hand and taped her pinky and ring fingers together. Graciela picked Maria up from school before starting her bus route. After Graciela finished the route, she

A-2460-16T3

showed Maria's hand to her boss. The boss said that they would need to report the incident.

On December 23, 2015, the Division received a referral from an Emerson police lieutenant, who was called by Maria's school. In the meantime, Graciela took Maria to the hospital. As depicted in a photograph, Maria returned from the hospital with two fingers wrapped together under a bandage, her wrist wrapped in an elastic bandage, and her arm in a sling. Bustamante called the bandage on her wrist a "cast." The trial court sustained an objection when Bustamante was asked to describe Maria's diagnosis, as found in the hospital discharge papers.

According to the police officer, as reported in the screening summary, Maria said Martin "pulled her hands down on the table." In her later interview with Bustamante, Maria gave another version. She said "she was holding her milk and cereal bowl on the table when [Martin] grabbed her hand, slammed it on the table, and then smashed it with his fist."

Asked about any past abuse, Maria said that once, while she was in kindergarten, Martin held her upside down. She said that this almost pulled her head off. In the mornings, she said Martin would often lose his temper and press her cheeks. Maria was afraid Martin might retaliate, although it was not clear

5

what he would be retaliating for. Bustamante testified that there was no indication that Martin was physical before and that this appeared to be an isolated incident.

Graciela said in an interview that Maria had attention deficit disorder (ADD) and was easily distracted. Maria did not take any medications but received accommodations at her school. Graciela said that Martin seemed to favor Sarina over Maria. Martin spoiled Sarina and was harder on Maria, occasionally being verbally rough. She said that she was the disciplinarian of the home. When asked about domestic violence, Graciela said that she was once shoved when they argued a few months ago. But generally, Graciela was not afraid of Martin. Graciela told investigators that she had called her sister-in-law after the hospital visit and told her that Maria's finger was broken.[2]

A short interview with Sarina was conducted. She confirmed the day's incident. She also said that she was not afraid of her parents.

Martin acknowledged the incident in his interview. He said he was trying to get Maria to apologize to Sarina in a respectful manner. She refused to

---

[2] As discussed below, the court relied on Graciela's hearsay statement that Maria's finger was broken, despite the court's exclusion of embedded hearsay. Graciela's statement presumably was based upon the hospital diagnosis, which was not admitted into evidence through a hearsay exception.

respond to him. When he asked why she did not answer him, she said she had food in her mouth. "He stated that 'you can talk to me with your mouth full to tell me that, but you can't answer me?'" Frustrated, he said he slapped Maria's shoulder a couple times. He said that Maria put up her hand to block when the injury occurred. He said that "he heard a noise of a possible 'dislocation' of [Maria's] finger." He saw her finger swell.

He said he immediately apologized to Maria and promised he would never hit her again, and asked her to remind him if he got mad in the future. He said they hugged. Martin admitted that he sometimes got stressed by Maria's behavior. He said that when he got frustrated, he sometimes grabbed Maria's cheeks or hands tightly. Bustamante testified that Martin appeared very remorseful.

The interviewing police officer told Martin that his story was consistent with Maria's, except on how the injury occurred. Responding that it all happened so fast, Martin altered his story to better match Maria's, admitting that "it appeared that I did slam her hand on the table."

The Division filed a complaint and an order to show cause seeking care and supervision with restraints. The prosecutor's office also charged Martin with second-degree endangering the welfare of a child and second-degree

7

aggravated assault. He was arrested and ordered to have no contact with Maria and to stay away from the family home. He was detained by Immigration and Customs Enforcement; but he eventually entered the pretrial intervention program and was released from ICE custody.[3]

In its oral decision, the court reviewed Bustamante's testimony, which it found credible. The court also summarized aspects of the documentary record. The court made the following findings:

> [T]he uncontroverted evidence as reported by the child and corroborated by the resulting injury, as well as the admissions of the defendant reflect that the defendant . . . grabbed [Maria's] hand and slammed [it] against the table injuring her pinky finger. The defendant . . . admitted that the child's finger was injured during an altercation[,] that he heard a noise that sounded like a dislocation, and he observed the child's finger swelling. However, he did not administer any first aid.

The court also noted earlier that Martin's initial version of events did not coincide with Maria's (and Graciela's, who relied on Maria). The court concluded that after Martin was confronted with the discrepancy, "he did not revise his narrative."

---

[3] The investigation summary stated incongruously that defendant was an "undocumented citizen." The record includes no competent and reliable evidence of defendant's immigration status.

A-2460-16T3

The court noted that Maria received medical attention, recounting the mother's report of the diagnosis:

> The defendant mother said that the child's hand was sprained and that her finger was broken. Mr. Bustamante testified that as a result of the injury, [Maria] required medical attention. She went to the hospital where a hand was wrapped in a cast, and her arm was in a sling.

The court concluded:

> I find that while [defendant's] actions do not indicate a pattern of abuse, he noted and admitted that the child's finger was injured during an altercation that he (sic) had with him. Although, [defendant] also indicated that he was remorseful for his actions, and that [Maria's] behavior can be challenging, there is no question that [defendant] intentionally caused injury to [Maria's] hand, which was severe enough that it required that she receive attention at a hospital. And [Graciela] also indicated that [Maria's] finger was, in fact, broken. For these reasons, I find that the Division has proven by a preponderance of the evidence that [defendant] placed [Maria] at substantial risk of physical injury and/or environment injurious to her health and welfare, and that [defendant] did physically abuse [Maria] by committing an act of excessive corporal punishment against her pursuant to N.J.S.A. 9:6-8.21(c)(4).

The judge entered a child protection order. Martin could visit the children out of the home, if supervised by Graciela. Martin was scheduled for a psychological evaluation and the court said that he could return home, in a supervised manner, if the evaluation went well. Martin also needed to attend

9

therapy in order to deal with anger management issues. After two compliance hearings, the family was reunited and the litigation was dismissed in January 2017.

II.

Defendant appeals from the court's finding that he failed to exercise a minimum degree of care by engaging in an act of excessive corporal punishment. Title 9 provides that an "[a]bused or neglected child" includes:

> a child whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian . . . to exercise a minimum degree of care . . . (b) in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, including the infliction of excessive corporal punishment . . . .
>
> [N.J.S.A. 9:6-8.21(c)(4)(b).]

The law does not prohibit the general use of corporal punishment – a "parent [or guardian] may inflict moderate correction such as is reasonable under the circumstances of a case." Dep't of Children & Families, Div. of Youth & Family Servs. v. K.A, 413 N.J. Super. 504, 510 (App. Div. 2010) (quoting State v. T.C., 347 N.J. Super. 219, 239-40 (App. Div. 2002)). A fact-sensitive inquiry

is needed to determine whether excessive corporal punishment occurred.  See N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 33 (2011).

Our review of the court's fact finding is limited.  N.J. Div. of Youth & Family Servs. v. S.H. & M.H., 439 N.J. Super. 137, 144 (App. Div. 2015).  We defer to the Family Court's fact finding because of the court's "special expertise" in family matters and the court's "superior ability to gauge the credibility of the witnesses who testify before it[.]"  N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448 (2012).  Although we will not disturb a trial court's fact finding "when supported by adequate, substantial, credible evidence[,]" Cesare v. Cesare, 154 N.J. 394, 412 (1998), we scrutinize more closely a "'trial judge's evaluation of the underlying facts and the implications to be drawn therefrom . . . .'"  N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (quoting In re Guardianship of S.T., 269 N.J. Super. 172, 189 (App. Div. 1993)).  We review issues of law de novo.  Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

The court's determination must be focused on the harm caused to the child, not the parent or guardian's intent.  N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 344 (2010).  Some foreseeable injuries might be sufficiently egregious to warrant a per se finding of excessive corporal punishment.  See

K.A., 413 N.J. Super. at 511-12. These injuries typically require "medical intervention," such as "fractured limbs, or a serious laceration." Ibid. If no per se injury is present, the fact finder must closely scrutinize the surrounding circumstances. See P.W.R., 205 N.J. at 33. Careful consideration must be given to the "nature and extent of the injuries" and the "instrumentalities used to inflict them." S.H. & M.H., 439 N.J. Super. at 146.

Additionally, courts should consider factors such as "(1) the reasons underlying [defendant's] action; (2) the isolation of the incident; and (3) the trying circumstances which [defendant] was undergoing . . . ." K.A., 413 N.J. Super. at 512. The age of the child is an important factor. "[F]or example, one ought not assume that what may be 'excessive' corporal punishment for a younger child must also constitute unreasonable infliction of harm, or excessive corporal punishment in another setting involving an older child." P.W.R., 205 N.J. at 33. Our courts have also considered whether the defendant recognized his or her error, was remorseful, and open to receiving help. See S.H. & M.H., 439 N.J. Super. at 147-48. The objective is to consider the "totality of the circumstances." Id. at 150.

Defendant argues that the courts in this State have inconsistently applied the excessive corporal punishment standard. We recognize that predictability

may be difficult, because the determination is a fact-sensitive one, made on a case-by-case evaluation of numerous factors. However, we shall not disturb a trial court order that is grounded in fact findings that are adequately supported by substantial credible evidence in the record, after due consideration of relevant factors under applicable legal principles.

Defendant argues that Maria did not suffer a serious injury. According to defendant, he did not strike a vulnerable part of the body with an instrumentality and there was nothing inherently risky about slamming Maria's hand on the table. Furthermore, defendant notes that the court excluded medical evidence of Maria's diagnosis and the precise nature of Maria's injury was unknown.

We are troubled by several of the court's fact findings, but we conclude that the court's errors are harmless. As an initial matter, we reject the contention that hands are not vulnerable. Hands can be fragile and it was entirely foreseeable that Maria's hand might be seriously injured when slammed against a table with force. However, the court's specific finding about the "nature and extent" of the child's injuries – that she suffered a broken finger – was unsupported by admissible evidence.

In its opinion, the court also twice referred to the mother's statement that Maria's finger was broken. The court did so notwithstanding that it had twice

sustained hearsay objections when the Division and the Law Guardian sought to elicit the diagnosis through Bustamante's testimony, and the court admitted the investigation report and screening summary with the proviso that embedded hearsay would be excluded. The child's diagnosis was embedded hearsay. The court also found that Maria suffered an injury "severe enough" to "require" hospital treatment. The fact that the mother chose to take the child to the hospital is not evidence that hospital treatment was required.

However, we conclude the court's error is inconsequential, because the admissible evidence demonstrated that Maria suffered an injury significant enough to warrant medical treatment. Although the court's finding of a broken finger was unsupported, the level of bandaging is circumstantial evidence that the injury required medical treatment. It matters not where Maria received the treatment, or whether the injury was a sprain, strain, dislocation or fracture. Defendant himself admitted the finger immediately swelled after the incident, and Maria reported pain significant enough that she wished to stay home from school.

The court also exaggerated defendant's lack of candor. As noted, the court stated that Martin "did not revise his narrative as to how the injury took place" when told it was at odds with Maria's and his wife's version. However, Martin

14

did change his story. As the investigative summary stated, defendant admitted, "'I think I grabbed her hand,' 'everything happened so fast.' He stated 'it appeared that I did slam her hand on the table.'" Although the court erred, the key point is not whether the defendant admitted the truth once confronted, but that defendant initially attempted to offer a false version of the events.

Defendant contends the trial court gave insufficient weight to the finding that defendant was remorseful, the incident was isolated, Martin was in a trying situation because Maria had ADD, and that he cooperated with counseling. Defendant contrasts his case with others involving unrepentant and uncooperative parents who were found to use excessive corporal punishment. We are satisfied that the judge in this case considered these factors in the analysis and understood that they were not determinative on the matter. Martin acted intentionally in grabbing Maria's hand and slamming it on the table. Even if he did not intend to injure Maria, he did cause an injury severe enough to require medical attention. Martin also did not immediately administer first aid although he heard a finger pop and saw it swell. We thus distinguish this case from K.A., in which we found that the mother promptly acknowledged her error; and the child did not suffer an injury that required medical attention. 413 N.J. Super. at 512-13.

15

Defendant also argues that the court should have considered his socio-economic status as a mitigating circumstance. Defendant claims that individuals with higher socio-economic status are routinely treated more leniently than individuals from a lower status. We acknowledge that financial pressures or other stressors may affect a parent's ability to apply child discipline with patience and appropriate restraint. However, there is no evidence that Martin lacked assistance or support. Unlike the parent in K.A., Martin was not a single parent who lacked the helping hand of other family members. In any event, we are satisfied that the court considered Martin's busy schedule and the impact of his modest, two-worker household, as part of its evaluation of the totality of the circumstances before concluding that Martin used excessive corporal punishment against Maria.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2460-16T3