NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2568-13T2

JOHN E. MYERS, TRUSTEE, and
DIANE D. MYERS, TRUSTEE,

    Plaintiffs-Respondents,

v.

OCEAN CITY ZONING BOARD OF
ADJUSTMENT,

    Defendant-Respondent,

and

CITY OF OCEAN CITY,

    Defendant-Appellant.

_____

> **APPROVED FOR PUBLICATION**
>
> **January 16, 2015**
>
> **APPELLATE DIVISION**

Argued September 16, 2014 — Decided January 16, 2015

Before Judges Messano, Ostrer and Sumners.

On appeal from the Superior Court of New Jersey, Law Division, Cape May County, Docket No. L-381-11.

Dorothy F. McCrosson argued the cause for appellant (McCrosson & Stanton, P.C., attorneys; Ms. McCrosson, on the briefs).

William R. Serber argued the cause for respondents John E. Myers and Diane D. Myers, Trustees (Serber Konschak, LLP, attorneys; Mr. Serber, of counsel; James E. Moore, on the brief).

The opinion of the court was delivered by

OSTRER, J.A.D.

On leave granted, the City of Ocean City appeals from the trial court's order compelling it to respond to a proposed zoning change recommended by the Ocean City Planning Board in its master plan reexamination report. Construing N.J.S.A. 40:55D-62(a), the trial court concluded that a governing body must adopt an ordinance consistent with a change proposed in a reexamination report, or the governing body must affirmatively reject the change after a hearing. We agree with the City that the statute does not require a governing body to affirmatively act in response to a master plan recommendation, so long as the existing ordinance is substantially consistent with the master plan's land use and housing plan elements. We therefore reverse.

I.

The material facts are undisputed. At issue is a proposed zoning change affecting the status of six residential properties in Ocean City's Beach and Dune Zone (B&D Zone). The proposal is the third of twelve master plan amendments recommended in the Planning Board's October 17, 2012, Master Plan Reexamination Report (2012 Report). According to the 2012 Report, residential and commercial uses were prohibited in the B&D Zone, which has existed since 1988. The only permitted uses pertained to beach and water recreation, flood prevention, and the maintenance of open space. Consequently, the six residences, which pre-dated

2

the zone's creation, became non-conforming uses and structures. The Planning Board noted that the owners were thereby prohibited from expanding their homes, or rebuilding them in the event of a destructive storm, unless they obtained a use variance. The Planning Board proposed to deem the residential properties conditional uses, and recommended several conditions designed to assure that the residences did not interfere with the flood preventative functions of the zone.

The City adopted several ordinances in 2012 and 2013 to implement various changes proposed in the 2012 Report unrelated to the B&D Zone. Prior to final adoption of these ordinances, the City obtained the Planning Board's consistency review, pursuant to N.J.S.A. 40:55D-64. However, the City took no action specifically regarding the proposed B&D Zone change.

Plaintiffs John E. and Diane D. Myers own two of the six affected residences — 19 and 21 Beach Road — which lie between the road and ocean. They purchased the homes in 2010 and 2009, respectively, when the homes were already deemed non-conforming uses. In 2011, they sought a variance from the Ocean City Zoning Board of Adjustment to enable them to expand the residence at 19 Beach Road. Plaintiffs sought to add a 302-square-foot deck, construct roofs over existing decks, and construct four dormer additions providing 120 square feet of head room.

The Zoning Board denied the variance in May 2011. Among other reasons, it found that expanding and extending the useful life of a non-conforming structure would violate the purposes of the B&D Zone. In 2011, plaintiffs filed an action in lieu of prerogative writ against the Zoning Board and the City.

Relevant to this appeal is an amended count of plaintiffs' complaint, which they sought to file after the Planning Board issued the 2012 Report. In the new count, plaintiffs requested an order compelling the City to adopt the B&D Zone change, or to endorse, affirmatively, maintenance of the zoning ordinance notwithstanding the proposed change. The court thereafter granted plaintiffs the requested relief.[1]

By order entered December 6, 2013, the court required the City to: "[a]mend the zoning ordinance to conform with 'Master Plan Amendment #3: Beach and Dune' in the master plan re-examination report[,]" or "[h]old a hearing as required under

---

[1] The procedural setting of the court's determination on the merits is unclear. The only formal motion before the court was plaintiffs' motion to amend their complaint. The City opposed the motion on the ground the amendment lacked merit. Oral argument on the motion to amend pertained to the substantive merits of the proposed cause of action. The court acknowledged that if the amendment were granted, the City would thereafter move to dismiss, renewing the arguments it presented in opposing the motion to amend. In a written decision issued several weeks after oral argument, the court both granted the motion to amend, and determined the merits of the added cause of action. It is uncertain from the record whether the parties, after oral argument, separately consented to a decision on the merits.

<u>N.J.S.A.</u> 40:55D-62(a) to permit the zoning ordinance to remain inconsistent with the master plan." The court required the City to comply within ninety-five days. We thereafter granted the City's motion for leave to appeal. The trial court then entered a stay of its order with the parties' consent.

## II.

At issue is the meaning of <u>N.J.S.A.</u> 40:55D-62(a). We review de novo the trial court's interpretation. <u>See</u> <u>Perez v. Zagami, LLC</u>, 218 <u>N.J.</u> 202, 209 (2014) (stating that an issue of statutory construction is a legal issue subject to de novo review); <u>Manalapan Realty, L.P. v. Twp. Comm. of Manalapan</u>, 140 <u>N.J.</u> 366, 378 (1995) ("A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference.").

The principles governing statutory interpretation are well-settled. Our goal is to determine and effectuate the Legislature's intent. <u>See, e.g.</u>, <u>In re Kollman</u>, 210 <u>N.J.</u> 557, 568 (2012). We begin with the statutory language. <u>Ibid.</u> "We ascribe to the statutory words their ordinary meaning and significance, and read them in context with related provisions so as to give sense to the legislation as a whole." <u>DiProspero v. Penn</u>, 183 <u>N.J.</u> 477, 492 (2005) (citations omitted); <u>see also</u> <u>Wilson ex rel. Manzano v. City of Jersey City</u>, 209 <u>N.J.</u> 558, 572

(2012) (stating that a provision "should not be read in isolation, but in relation to other constituent parts so that a sensible meaning may be given to the whole of the legislative scheme").  If the language is clear, our task is complete; if it is not, we may turn to extrinsic evidence.  Kollman, supra, 210 N.J. at 568.

The provision in dispute addresses a governing body's authority to adopt a zoning ordinance, and its conformity with the municipality's master plan:

> The governing body may adopt or amend a zoning ordinance relating to the nature and extent of the uses of land and of buildings and structures thereon.  Such ordinance shall be adopted after the planning board has adopted the land use plan element and the housing plan element of a master plan, and all of the provisions of such zoning ordinance or any amendment or revision thereto shall either be substantially consistent with the land use plan element and the housing plan element of the master plan or designed to effectuate such plan elements; provided that the governing body may adopt a zoning ordinance or amendment or revision thereto which in whole or part is inconsistent with or not designed to effectuate the land use plan element and the housing plan element, but only by affirmative vote of a majority of the full authorized membership of the governing body, with the reasons of the governing body for so acting set forth in a resolution and recorded in its minutes when adopting such a zoning ordinance; and provided further that, notwithstanding anything aforesaid, the governing body may adopt an interim zoning ordinance pursuant to subsection b. of

section 77 of P.L.1975, c. 291 [N.J.S.A. 40:55D-90].

[N.J.S.A. 40:55D-62(a).]

We agree with the City that nothing in the plain language of section 62(a) requires a governing body to affirmatively act in response to a reexamination report. Rather, the statute imposes conditions upon a governing body when it decides to act. The first sentence of the provision makes it clear that adoption of an ordinance or an amendment is permissive. "The governing body may adopt or amend a zoning ordinance." Ibid. (emphasis added). The use of the word "may" generally conveys that an action is permissive, not mandatory. See, e.g., Harvey v. Bd. of Chosen Freeholders, 30 N.J. 381, 391 (1959) (stating that, absent legislative intent to the contrary, use of "may" indicates that a provision is permissive, and use of "shall" or "must" reflects that a provision is mandatory).

If the governing body chooses to adopt or amend an ordinance, it must do so only after adoption of a master plan. That is the import of the command in the second sentence that "[s]uch ordinance shall be adopted after the planning board has adopted the land use plan element and the housing plan element of a master plan. . . ." N.J.S.A. 40:55D-62(a) (emphasis added). Furthermore, if the governing body decides to adopt or amend an ordinance, then — subject to a proviso — "all of the

provisions of such zoning ordinance or any amendment or revision thereto <u>shall</u> . . . be substantially consistent" with the master plan's land use and housing plan elements, or "designed to effectuate such plan elements." <u>Ibid.</u> (emphasis added).

The proviso allows the governing body to adopt an ordinance that is inconsistent with those master plan elements. The governing body "<u>may</u> adopt" such an ordinance if it does so by majority vote of the governing body's full authorized membership "with the reasons . . . for so acting set forth in a resolution and recorded in its minutes . . . ." <u>Ibid.</u> (emphasis added).

Under the statutory scheme requiring reexamination of the master plan, a pre-existing zoning ordinance may become inconsistent with one aspect of a reexamination report. However, the statute does not expressly require action. It requires a majority vote and a statement of reasons only if the governing body thereafter adopts an inconsistent ordinance or amendment. In other words, only when a governing body acts affirmatively to adopt a zoning ordinance or amendment that is inconsistent with the then-existing master plan is the majority vote and statement of reasons requirement triggered.

We find no basis in the statute's plain language for plaintiffs' contention that a governing body must affirmatively provide reasons for its inaction. "The plain language of the

statute does not require the governing body to justify the inconsistency by majority vote and a statement of reasons where the governing body has not affirmatively changed the zoning ordinance by adoption, amendment or revision."  Victor Recchia Residential Constr., Inc. v. Zoning Bd. of Adjustment of Cedar Grove, 338 N.J. Super. 242, 250-51 n.3 (App. Div. 2001);[2] see also Cox & Koenig, N.J. Zoning & Land Use Administration, § 34-2.2 at 776 (2014) ("There is no clear statutory provision dealing with the failure of the governing body to amend or adopt ordinances in response to significant changes in a new Master Plan or re-examination report that require such amendment or adoption.").

We do not endorse Cox & Koenig's subsequent comment, "It would seem that an unreasonable delay in adopting such an ordinance change or in adopting a resolution stating the reasons

---

[2] The trial court deemed this statement to be dictum, and opined it was therefore not bound by it.  We disagree it was dictum, as it was germane to the primary issue in the case — whether the municipality's zoning ordinance was substantially consistent with the master plan.  See State v. Rose, 206 N.J. 141, 183 (2011) (stating that "matters in the opinion of a higher court which are not decisive of the primary issue presented but which are germane to that issue . . . are not dicta, but binding decisions of the court") (internal quotation marks and citation omitted).  In any event, dictum is intended to provide guidance to courts that may address an issue in the future.  Just as we are bound by "carefully considered dictum from the Supreme Court," State v. Breitweiser, 373 N.J. Super. 271, 283 (App. Div. 2004), certif. denied, 182, N.J. 628 (2005), a trial court should be bound by similar pronouncements by our court.

for not doing so should create, at some point in time, a presumption that the ordinance is invalid." Ibid. We find no basis in the statute or the Legislature's intent to reverse the usual presumption of validity of municipal zoning ordinances. See Riggs v. Twp. of Long Beach, 109 N.J. 601, 610-11 (1988); Victor Recchia, supra, 338 N.J. Super. at 249. However, as discussed below, a governing body's inaction may render its zoning ordinance susceptible to a general challenge that it is substantially inconsistent with the master plan, and therefore invalid.

The trial court's order contemplates that the governing body adopt one of two alternatives: amend its zoning ordinance to conform to the master plan's proposed B&D Zone change; or endorse the status quo with a statement of reasons adopted by a required majority vote. However, the statute simply does not require a governing body to endorse the status quo preceding a master plan revision. The statute ties the adoption of reasons to the adoption of an ordinance. "Plainly read, the statute requires that the reasons for inconsistency be established when the inconsistent ordinance is adopted." E. Mill Assocs. v. Twp. Council of E. Brunswick, 241 N.J. Super. 403, 407 (App. Div. 1990). In East Mill, we held that a resolution adopted approximately one month after passage of an ordinance was

insufficient, because the resolution was not contemporaneous with passage of the ordinance.  Id. at 406-07.

If the Legislature had intended to require a governing body to respond to a master plan change, it presumably would have imposed deadlines for such action, as it has in so many other instances in the Municipal Land Use Act (MLUL), N.J.S.A. 40:55D-1 to -163.  See, e.g., N.J.S.A. 40:55D-17(c) (noting that if the governing body fails to hold a hearing and render a decision in an appeal of a zoning board decision within ninety-five days, the decision will be deemed affirmed); N.J.S.A. 40:55D-26(a) (stating that failure of the planning board to transmit its consistency report to the governing body within thirty-five days relieves the governing body from certain requirements under the subsection).  Instead, the Legislature imposed conditions if the governing body chose to act: by requiring substantial consistency of zoning amendments; or approval by a majority of the full membership of amendments that are inconsistent with the plan, along with a statement of reasons.

We recognize the important role of planning in the MLUL. See Riggs, supra, 109 N.J. at 618-22 (Handler, J., concurring); Willoughby v. Wolfson Grp., Inc., 332 N.J. Super. 223, 229 (App. Div.) ("It is apparent that the MLUL gives the master plan a central role in a municipality's decisions regarding the use and

development of the land within its jurisdiction."), <u>certif. denied</u>, 165 <u>N.J.</u> 603 (2000). The role is implemented in part by the mandated reference of proposed zoning ordinances to a planning board, and the consistency requirement embodied in section 62(a). <u>See</u> <u>Riya Finnegan LLC v. Twp. Council of S. Brunswick</u>, 197 <u>N.J.</u> 184, 192 (2008) ("Although the Master Plan itself has no independent force, the requirement that the zoning ordinance be 'substantially consistent' with it connotes a recognition by our Legislature of the importance of comprehensive planning.").

Nonetheless, the MLUL does not mandate absolute consistency between a zoning ordinance and a master plan. "[T]he concept of 'substantially consistent' permits some inconsistency, provided it does not substantially or materially undermine or distort the basic provisions and objectives of the Master Plan." <u>Manalapan</u>, <u>supra</u>, 140 <u>N.J.</u> at 384. Moreover, a governing body's determination that its ordinance is substantially consistent is entitled to great weight and deference. <u>Id.</u> at 383. In <u>Manalapan</u>, the Court deferred to a governing body's judgment that a zoning ordinance that banned a Home Depot and stores like it from a particular zone was not inconsistent with the municipality's master plan. <u>Ibid.</u>

Our reading of section 62(a) does not undermine the Legislature's broader purpose in the MLUL to advance the role of planning. Nor does it render a master plan reexamination a nullity. If a governing body chooses not to act in the wake of a master plan revision, it does so at its peril; its zoning ordinance must nonetheless remain "substantially consistent" with the master plan. An ordinance may survive although it falls short of that standard only if it is approved in conformity with section 62(a) — that is, adoption by majority vote of the full membership, and a statement of reasons.

In Victor Recchia, the plaintiff asserted that a pre-existing ordinance was rendered invalid because it had become inconsistent with the new master plan. Victor Recchia, supra, 338 N.J. Super. at 245, 248-49. We affirmed the trial court's determination that the ordinance remained substantially consistent with the master plan. Id. at 252. In so doing, we recognized that if the inconsistency between the prior ordinance and new plan were more dramatic, then the ordinance would have been rendered invalid. Id. at 250-51.

> Here, an existing zoning ordinance was in effect when a new master plan was adopted in 1991. The governing body did not change the zoning ordinance to reflect the new land use element. This caused an inconsistency between the master plan and the ordinance with respect to the split lots in the area involved in this litigation. Hence, the

A-2568-13T2

> question is whether the ordinance is substantially consistent with the master plan.
>
> [Ibid.]

As noted above, we went on to address the precise statutory interpretation presented by plaintiffs, and found that the statute's plain language did not "require the governing body to justify the inconsistency" resulting from its inaction in the face of a revised master plan. Id. at 250-51 n.3.

We therefore reverse the trial court's order compelling the governing body to adopt an amendment to the zoning ordinance to conform with the proposed B&D Zone change, or to conduct a hearing at which it would affirmatively reject the change. We do so without prejudice to any claim by plaintiffs that the City's zoning ordinance is invalid because it is not substantially consistent with the master plan, in light of the failure to adopt the B&D Zone change, and any other remaining but unadopted changes proposed in the 2012 Report.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2568-13T2