**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2379-22

JERSEY SHORE BEACH AND
BOARDWALK COMPANY, INC.,
a/k/a JERSEY SHORE BEACH
& BOARDWALK, INC.,

     Plaintiff-Appellant,

v.

BOROUGH OF KEANSBURG,
a Municipal Corporation, and
BOROUGH COUNCIL OF THE
BOROUGH OF KEANSBURG, and
PLANNING BOARD OF THE
BOROUGH OF KEANSBURG,

     Defendants-Respondents.

_____

Argued October 23, 2024 – Decided January 13, 2025

Before Judges Currier, Marczyk and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-1262-21.

R.S. Gasiorowski argued the cause for appellant (Gasiorowski & Holobinko, attorneys; R.S. Gasiorowski, on the briefs).

David A. Clark argued the cause for respondents Borough of Keansburg and Borough Council of the Borough of Keansburg (Dilworth Paxson LLP, attorneys; David A. Clark, of counsel and on the brief).

Kevin E. Kennedy argued the cause for respondent Keansburg Planning Board of Adjustment (Law Offices of Kevin E. Kennedy, LLC, attorneys; Kevin E. Kennedy, on the brief).

PER CURIAM

Plaintiff Jersey Shore Beach and Boardwalk Inc. (Jersey Shore) appeals from the April 7, 2022 order, denying it summary judgment and granting defendants, Borough of Keansburg (Borough), Borough Council (Council), and Borough Planning Board (Board) summary judgment as to Jersey Shore's claim that the Borough's Second Amended Redevelopment Plan (SARP) facially violated the Public Trust Doctrine (PTD); and from the February 28, 2023 order, following a bench trial, denying Jersey Shore's claim that the SARP was inconsistent with the Master Plan and improperly adopted in contravention of N.J.S.A. 40A:12A-7.[1]

---

[1] Jersey Shore also appealed from a: (1) November 19, 2021 order denying it reconsideration of a prior discovery order; (2) June 10, 2022 order, denying reconsideration of the April 7, 2022 order; and (3) February 27, 2023 order, granting the Borough's and the Council's motion in limine barring Jersey Shore from introducing any evidence at trial regarding the PTD. However, Jersey Shore has not briefed discovery, reconsideration, or evidentiary issues and

I.

We glean the facts and procedural history from the record. The Borough's Master Plan was adopted in 1988.[2] The Master Plan, in part, provided objectives and recommendations including to: (1) "[e]ncourage the most appropriate use of land consistent with its suitability for development"; (2) "[p]rovide sufficient space in appropriate locations for residential, recreational, commercial and open space use"; (3) "[p]romote a desirable visual environment"; (4) "[e]ncourage development that contributes to the revitalization of the community"; and (5) "[g]uide waterfront development to maintain visual and pedestrian access to the Bayshore for the general public while encouraging development that is suitably scaled, compatible with public facilities and services, and appropriate to a waterfront location."

In addition, one of the 1988 Master Plan's stated policies is:

> Bayfront Development: Guide waterfront development, which protects the public need for shore

---

therefore we deem any argument regarding those issues waived. See N.J. Dep't of Envt'l Prot. v. Alloway Twp., 438 N.J. Super. 501, 505 n.2 (App. Div. 2015) ("An issue that is not briefed is deemed waived upon appeal.").

[2] Under N.J.S.A. 40:55D-28(a) to (b), a master plan "guide[s] the use of lands within the municipality in a manner which protects public health and safety and promotes the general welfare" and "generally comprise[s] a report or statement and land use and development proposals."

protection and flood control, visual and pedestrian access to the waterfront, recreation and open space and economic development. The Borough should encourage appropriate use of waterfront locations and coordinate its efforts with the County's plan to improve waterfront access along the Raritan Bayshore.

Moreover, as to land use recommendations, the Master Plan provides:

Mixed Use – Commercial and Residential: Mixed-use development should contain two or more uses that are developed according to an established plan and integrate the uses physically and functionally. It is likely that a successful mixed use would have to contain a multi-family residential component. Appropriate regulations to guide mixed-use development can be created through the conditional use mechanism of the Municipal Land Use Law [(MLUL)].

In 2003, the Board adopted a Master Plan Reexamination Report (2003 Reexamination Report). The report stated that it constituted the Board's compliance with N.J.S.A. 40:55D-89. The 2003 Examination Report states, in part, that:

It should remain the Borough's intention to explore the opportunities associated with mixed-use development and other commercial and recreational uses that could enhance the waterfront's potential.

. . . .

The Bayfront area is recognized as an asset for the revitalization of the Borough . . . . Development and redevelopment of both public and private properties for the long-term economic health of the community in the

4

Bayfront area [should] remain an important factor in the economic health of the community. Efforts to protect the beach and dunes, enhance public access and expose the waterfront's potential should be encouraged and coordinated with State and County plans.

In July 2005, the Council designated the entire Borough as an area in need of rehabilitation as permitted under the Local Redevelopment Housing Law, N.J.S.A. 40A:12A-1.

In 2006, the Council adopted, by Ordinance No. 1403, the Beachway Avenue Waterfront Redevelopment Plan (WDP). The WDP "provide[d] development guidelines for the redevelopment of the Beachway Avenue Waterfront Redevelopment District." Included within the district was Block 184 Lots 1, 2 and 3. The WDP described lots "1 and 2 as undeveloped; and [l]ot 3 as a public surface parking lot used for the adjacent amusement park and for the beach."

The WDP's stated goal was "to return vacant, non-productive properties to full productivity." In addition, the WDP was "intended to accommodate a mix of higher density residential uses with supportive neighborhood retail services, regional commercial uses and services, and the enhancement and development of a variety of waterfront and recreational uses along the Raritan Bay shoreline."

A-2379-22

In 2012, the Board adopted the 2012 Master Plan Reexamination Report (2012 Reexamination Report). The report stated that it constituted the Board's compliance with N.J.S.A. 40:55D-89. The 2012 Reexamination Report noted the Council adopted Ordinance No. 1403 and that the Council "was actively discussing . . . the concept of redevelopment of the" WDP.

In 2015, the Board adopted the "2015 Master Plan Reexamination Report [and] Amendments." (2015 Reexamination Report). The report stated that it constituted the Board's compliance with N.J.S.A. 40:55D-89. The 2015 Reexamination Report stated that the

> [l]and use along the Borough's mixed use commercial residential area (extending along Beachway . . . ) should encourage major redevelopment that provides for a mix of uses designed according to an overall plan that enhances public access to the waterfront, protects beaches and dunes, and contributes substantially to [the Borough]'s economic well-being.

In June 2017, the Council adopted Ordinance No. 1600, to "create an overlay zone governing the" Beachway Avenue Waterfront Redevelopment Plan. This "First Amended Redevelopment Plan" (FARP) superseded and replaced the WDP. The FARP encompassed "Block 184, Lots 1, 3 and part of Lot 3.01." The FARP stated that the lots had "prime access to the Borough's beachfront along Beachway Avenue." It described "Lot 1 [a]s undeveloped. Lot

6

3 [a]s a public surface parking lot that is used for the adjacent amusement park and for the beach; Lot 3 and a portion of Lot 3.01 also include a portion of the Keansburg Amusement Park . . . ."

In January 2021, the Council introduced Ordinance No. 1667. The Ordinance stated that the Council's intention was to adopt the SARP. The Council submitted the SARP to the Board for its Master Plan consistency review.

In February 2021, the Board conducted its consistency review during a public meeting. The Board considered testimony from its engineer and a licensed professional planner. The planner testified as to the overall changes envisioned in the SARP. In addition, the planner testified the SARP was consistent with the policy statement enunciated in the 1988 Master Plan, and "contemplate[d] comprehensive assessment and comprehensive access to the beachfront areas." Moreover, the planner testified the SARP was consistent with the 2015 Reexamination Report because the SARP effectuated the goal of "mixed use commercial and residential." After the Board engaged in a question-and-answer session with the professionals, and not hearing any comments from the public, the Board unanimously voted that the SARP was consistent with the Master Plan.

7

The Board's attorney wrote to the Borough Clerk. The attorney described the details of the Board's consistency review and advised that "the Board found that the proposed . . . [SARP] . . . is, in fact, consistent with the . . . Master Plan."

Thereafter, the Council held a public hearing regarding the SARP. The Council noted the Board's determination that the SARP was consistent with the Master Plan. The Council considered testimony from the engineer and the licensed professional planner. The engineer provided an overview. The planner explained the SARP included multifamily residential buildings, a retail or commercial component, construction of a public parking lot, and linkage to open space areas and paths for pedestrian access. In addition, the planner opined the SARP was "consistent with the Borough's vision for the redevelopment of the Beachway tract." After allowing for the Council's question-and-answer session and receiving no comments from the public, the Council unanimously adopted the SARP.

Jersey Shore filed a four-count complaint in lieu of prerogative writ. Jersey Shore contended it was the owner of Block 184 Lot 4 and was the owner/lessee of Block 184 Lot 3.01.[3] Jersey Shore alleged: (1) the Board failed

_____

[3] Jersey Shore advises that the "[i]ssue of the ownership of Block 184 Lot 3.01 is currently in litigation." In Jersey Shore Beach & Boardwalk Co., Inc. v.

to find the SARP was inconsistent with the Master Plan; (2) as a consequence of the Board's failure, the Borough's adoption of the SARP was invalid; (3) the Borough's adoption of the SARP was arbitrary, capricious and unreasonable and invalid; and (4) the SARP was contrary to the "public trust" policies and requirements and is invalid.

## II.

On April 7, 2022, the court denied Jersey Shore summary judgment and granted defendants summary judgment, with prejudice, as to Jersey Shore's claim that the SARP violated the PTD. In an eleven-page statement of factual findings and application of the summary judgment standard, the judge determined that "because Jersey Shore's theoretical concern [wa]s not yet ripe . . . [it's] challenge to the [SARP] as being invalid vis-[à-]vis the [PTD] must be rejected as a matter of law."

The judge explained that New Jersey codified the PTD and "called on the D[epartment of Environmental Protection (DEP)] to promulgate . . . regulations to enforce" the legislation. The judge noted that part of the authority delegated to the DEP was to "'ensure that any approval, permit, administrative order, or

Borough of Keansburg, No. A-0621-23 (App. Div. Dec. 10, 2024), we affirmed the trial court's order finding that the Borough was the owner of Lot 3.01.

consent decree issued, or other action taken, by [DEP]' [wa]s consistent with the" PTD, citing N.J.S.A. 13:1D-151(a).

The judge accepted Jersey Shore's contention "that before the proverbial shovels enter the ground on a contemplated project, various approvals and/or permits w[ould] be needed from DEP." However, the judge found that the SARP "challenged in this action [wa]s not an application by any entity . . . made to DEP for approval, issuance of a permit, execution of an order, or consensual agreement for development." Indeed, the judge concluded the Ordinance and the SARP did not require any DEP action. Further, since "no entity [wa]s yet seeking permission in any form whatsoever from DEP," the judge concluded that "Jersey Shore's entire thesis [wa]s . . . academic and theoretical." The judge determined N.J.S.A. 13:1D-151(a) had not been "triggered" by the Ordinance and Plan.

Further, the judge considered DEP's regulatory authority. The judge found there was "no dispute that the parcel at issue [wa]s subject to the [PTD]," citing N.J.A.C. 7:7-9.48. However, in reviewing the DEP's regulation regarding "public access," the judge concluded that the regulation was only triggered when there was "development proposed on sites," citing N.J.A.C. 7:7-16.9(c). Therefore, since "there [wa]s no proposed development project at th[at]

juncture" and "the Ordinance and Plan in no way propose[d] such," the regulation was not yet applicable.

Moreover, the judge considered that "[m]unicipalities [we]re encouraged to develop and submit to the [DEP] an application for approval of a Municipal Public Access Plan . . . [(MPAP)]." N.J.A.C. 7:7-16.9(c). However, noting the Legislature's permissive use of the word "encouraged," the judge concluded the Borough did not have a mandatory obligation to adopt a MPAP at the time. Instead, while adoption of the MPAP would allow "permit application[s]" to rely on the MPAP to satisfy public access requirements, see N.J.A.C. 7:7-16.9(c)(1), in the absence of the MPAP each application would require "a project specific access plan." See N.J.A.C. 7:7-16.9(c)(2).

Therefore, the judge concluded that Jersey Shore's argument under the PTD was premature because the "[t]he Ordinance and Plan adopted by [the Borough] d[id] not seek DEP approval of anything." Thus, while "a development project may be contemplated, same [wa]s theoretical" and "any challenge to the theoretical, future, contemplated development project c[ould]not yet be analyzed under the [PTD] as codified in statute and further promulgated in DEP's regulations."

The judge did not foreclose a future, as-applied, challenge to the SARP. However, he recognized that the "development that eventually moves forward could be a far cry from the conceptual plan."

On appeal, Jersey Shore contends the judge's determination was "nonsensical, and . . . indefensible . . . [and] contrary to clearly established law." Jersey Shore argues that "[t]o the extent that a 'trigger' [wa]s necessary, the 'trigger' was the enactment of the" SARP and the matter was "ripe" because the SARP "effectively changes the potential use" of the area. Therefore, Jersey Shore contends, "it does not have to wait until a developer seeks to finalize the illegal [SARP] to have the right to challenge" it.

We review a grant or denial of summary judgment de novo, applying the same standard as the trial court. See Samolyk v. Berthe, 251 N.J. 73, 78 (2022). Therefore, we "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); see also R. 4:46-2(c). "If there is no genuine issue of material fact, we must then 'decide whether the trial court correctly interpreted the law.'" DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super.

12

325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs. Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)).

Factual "[f]indings by the trial judge are considered binding on appeal when supported by adequate, substantial and credible evidence." Rova Farms Resort v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974). "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

"The [DEP] has the authority and the duty to protect the public's right of access to tidally flowed waters and their adjacent shorelines under the [PTD] and statutory law." N.J.S.A. 13:1D-150.[4]

"The [PTD] refers to the common-law principle that a state holds, in trust for the people, ownership, dominion and sovereignty over tidally flowed lands extending to the mean high water mark." Susko v. Borough of Belmar, 458 N.J. Super. 583, 590 (App. Div. 2019) (internal quotation marks omitted). Under the doctrine, the public has the right to reasonable access to the trust lands. Raleigh Ave. Beach Ass'n v. Atlantis Beach Club, Inc., 185 N.J. 51-55 (2005).

---

[4] There is no indication the parties have engaged the DEP.

"The [DEP] may adopt . . . rules and regulations necessary to implement the provisions of" N.J.S.A. 13:1D-150. In accord with that authority, N.J.A.C. 7:7-16.9(a) provides:

> Public access to the waterfront is the ability of the public to pass physically and visually to, from, and along tidal waterways and their shores and to use such shores, waterfronts and waters for activities such as navigation, fishing, and recreational activities including, but not limited to, swimming, sunbathing, surfing, sport diving, bird watching, walking, and boating. Public accessways and public access areas include streets, paths, trails, walkways, easements, paper streets, dune walkovers/walkways, piers and other rights-of way.

Further, the regulations provide that "[d]evelopment proposed on sites, which are located on or adjacent to tidal waterways and their shores shall provide public access." N.J.A.C. 7:7-16.9(c). "Municipalities are encouraged to develop and submit to the D[EP] an application for approval of a [MPAP]." Ibid. When a municipality incorporates a DEP approved MPAP into its Master Plan, the "public access requirements shall be satisfied in accordance with the [MPAP]." N.J.A.C. 7:7-16.9(c)(1). However, in the absence of that pre-approval, each application requires "a project specific access plan." N.J.A.C. 7:7-16.9(c)(2).

14

"Whether a case is ripe for judicial review presents a legal issue we review de novo." State v. Missak, 476 N.J. Super. 302, 313 (App. Div. 2023). A ripeness determination "depends on two factors: '(1) the fitness of issues for judicial review and (2) the hardship to the parties if judicial review is withheld at this time.'" Committee to Recall Robert Menendez From the Office of U.S. Senator v. Wells, 204 N.J. 79, 99 (2010) (quoting K. Hovnanian Cos. of N. Cent. Jersey, Inc. v. N.J. Dep't of Envtl. Prot., 379 N.J. Super. 1, 9 (App. Div. 2005)) (internal quotation marks omitted).

First, we conclude the issue of whether the SARP violates the PTD is not fit for review. Only after an actual development application is revealed can a meaningful PTD analysis be conducted. The analysis is not just a legal one, but instead, requires a factual analysis including an actual development application or permit. See ibid.

Second, there is no harm in declining to attempt to resolve the issues immediately. See ibid. Jersey Shore contends the "tangible harm is an illegal law and [the SARP] that affects Jersey Shore and the public now for future planning, and Jersey Shore (and any interested person) has every right to seek redress now." However, Jersey Shore's argument is countered by its own trial court position that various approvals and/or permits will be required from DEP.

Since a myriad of additional steps are required once an application for an actual redevelopment plan is made, the public's rights under the PTD are still preserved and protected.

Therefore, we conclude there was no error in the trial court's determination that Jersey Shore's facial challenge to the SARP under the PTD was not ripe. Nothing in our opinion precludes an as-applied challenge to the SARP if a development permit or application is filed.

III.

Jersey Shore's challenge to the Board's and the Council's consistency reviews was subject to a bench trial—the parties agreed not to present witness testimony—that consisted of the parties' oral presentations and various exhibits. The judge concluded that the SARP was consistent with the Master Plan and the reexamination reports; and that "Jersey Shore c[ould] not overcome the presumption in favor of validity of municipal action nor the high bar of demonstrating that [the Borough]'s actions were arbitrary, capricious, nor supported by the record."

Jersey Shore contends that the Board's and Council's consistency reviews were "cursory" and should not have included the Board's reexamination reports that amounted to "vague platitude[s]" that were "never implemented or

incorporated into the Master Plan." In addition, Jersey Shore argues that the trial court "misunderstood and misapplied the [l]aw, really failing to consider the Master Plan 'consistency' at all."

In our review of an appeal from a bench trial, we defer "to the trial court's factual findings . . . when supported by adequate, substantial and credible evidence." Zaman v. Felton, 219 N.J. 199, 215 (2014) (internal quotation marks omitted). However, "the trial court's conclusions of law are reviewed de novo. A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Ibid. (quoting Manalapan Realty, 140 N.J. at 378).

The Board was required to conduct a consistency review of the SARP under N.J.S.A. 40A:12A-7(e). The statute provides:

> Prior to the adoption of a redevelopment plan, or revision or amendment thereto, the planning board shall transmit to the governing body, within [forty-five] days after referral, a report containing its recommendation concerning the redevelopment plan. This report shall include an identification of any provisions in the proposed redevelopment plan which are inconsistent with the master plan and recommendations concerning these inconsistencies and any other matters as the board deems appropriate.
>
> [N.J.S.A. 40A:12A-7(e).]

The Board's consistency determination is entitled to deference and great weight. See Manalapan Realty, 140 N.J. at 383 (considering substantially similar statutory language under N.J.S.A. 40:55D-26(a)). Courts must give deference to the actions and factual findings of local boards and may not disturb such findings unless they were arbitrary, capricious, or unreasonable. Fallone Props., L.L.C. v. Bethlehem Twp. Plan. Bd., 369 N.J. Super. 552, 560 (App. Div. 2004).

In addition, the Council was required to undertake its own consistency review of the SARP. N.J.S.A. 40A:12A-7(d) provides "[a]ll provisions of the redevelopment plan shall be either substantially consistent with the municipal master plan or designed to effectuate the master plan." Nonetheless, a "municipal governing body may adopt a redevelopment plan which is inconsistent with or not designed to effectuate the master plan by affirmative vote of a majority of its full authorized membership with the reasons for so acting set forth in the redevelopment plan." Ibid.

"[T]he concept of 'substantially consistent' permits some inconsistency, provided it does not substantially or materially undermine or distort the basic provisions and objectives of the Master Plan." Manalapan Realty, 140 N.J. at 384.

Jersey Shore baldly contends the Board's and Council's consistency reviews were cursory. Jersey Shore's contention is belied by the record. The Board held a public meeting and considered testimony from an engineer and a licensed professional planner. Moreover, the planner testified the SARP was consistent with the 2015 Reexamination Report because the SARP effectuated the goal of "mixed use commercial and residential."

Further, the Council considered the Board's consistency review, and heard testimony from the engineer and the licensed professional planner. The planner opined the SARP was "consistent with the Borough's vision for the redevelopment of the Beachway tract."

Therefore, we are satisfied that the Board and the Council engaged in meaningful and detailed consistency reviews as required by statute. Aside from alleging the Board's and Council's reviews were "cursory," Jersey Shore fails to proffer any Board or Council deficiency or omission.

Substantively, Jersey Shore argues the trial court's analysis of the consistency reviews was required to be conducted between the 1988 Master Plan and the SARP, because "[a]lthough there apparently ha[d] been Master Plan [r]eexamination [r]eports in 2003, 2012 and 2015, a [r]eexamination [r]eport is not a Master Plan, it is a recommendation that the Master Plan be revised or

updated in some particulars." Jersey Shore asserts the Board's reexaminations were "vague platitude[s] that w[ere] never implemented or incorporated into the Master Plan itself." Jersey Shore acknowledges that "[i]f the [r]eexamination [r]eport and its recommendations are in sufficiently crystallized form, [it] could --- if and only if acted upon by the formal [n]otice and [h]earing procedure required --- be adopted and considered as an amendment or supplement to the Master Plan."

Before considering the merits of Jersey Shore's substantive arguments, we address a few preliminary issues. First, Jersey Shore suggests the reexamination reports were adopted in a procedurally deficient manner. However, that underdeveloped argument was not raised with the trial court.

"Appellate review is not limitless." State v. Robinson, 200 N.J. 1, 19 (2009). "The jurisdiction of appellate courts rightly is bounded by the proofs and objections critically explored on the record before the trial court by the parties themselves." Ibid. It is well established that we will not consider an argument which was not raised before the trial court. See Selective Ins. Co. of Am. v. Rothman, 208 N.J. 580, 586 (2012). Thus, we "decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available 'unless the questions so raised on appeal go

to the jurisdiction of the trial court or concern matters of great public interest.'" Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)).  Therefore, because the argument is not developed, and raised for the first time on appeal, we decline to consider the Board's procedures in adopting the reexamination reports.

Second, at trial, Jersey Shore's arguments referenced the reexamination report.  Moreover, Jersey Shore did not object when the Borough repeatedly referred to the reexamination report.  Thus, Jersey Shore understood the importance of the reexamination report to the Board's and Council's consistency analysis and consequently the trial court's review of the Board's and Council's actions.

Here, Jersey Shore's apparent about-face on this issue—now arguing the consistency analysis should not include the reexamination report—deprived the trial court of an opportunity to consider the issue.  Again, raising the argument for the first time on appeal is inappropriate.  See Rothman, 208 N.J. at 586. Nonetheless, while the issue "does not relate to the jurisdiction of the trial court, [it] arguably does address an issue of public interest.  In this light and because the matter solely involves a question of law, we will consider the" argument.

Borough of Pitman v. Monroe Sav. Bank, SLA, 425 N.J. Super. 245, 254 (App. Div. 2012).

The planning board has the jurisdiction to "prepare and, after public hearing, adopt or amend a master plan or component parts thereof, to guide the use of lands within the municipality in a manner which protects public health and safety and promotes the general welfare." N.J.S.A. 40:55D-28(a). While "[t]he [m]aster [p]lan serves as the basis for the zoning ordinance it does not have the operative effect of a zoning ordinance." Cox & Koenig, N.J. Zoning and Land Use Administration § 8-1 (2024); see also Manalapan Realty, 140 N.J. at 381.

Further, "[t]he governing body shall, at least every [ten] years, provide for a general reexamination of its master plan and development regulations by the planning board, which shall prepare and adopt by resolution a report on the findings of such reexamination . . . ." N.J.S.A. 40:55D-89.

"[T]he mandatory re[]examination by the planning board of the master plan and zoning ordinance . . . is intended to inform the governing body of the need for revisions in the plan and ordinance based on the significant changes in the community since the last such re[]examination." Medici v. BPR Co., 107 N.J. 1, 20 (1987).

The Legislature made the reexamination of the master plan crucial to municipal development regulations. Indeed, "[t]he absence of the adoption by the planning board of a reexamination report . . . constitute[s] a rebuttable presumption that the municipal development regulations are no longer reasonable." N.J.S.A. 40:55D-89.1.

In Myers v. Ocean City Zoning Board of Adjustment, 439 N.J. Super. 96 (App. Div. 2015), we recognized the importance of a reexamination report to the master plan. We noted "a master plan reexamination [is not] a nullity. If a governing body chooses not to act in the wake of a master plan revision, it does so at its peril; [because] its zoning ordinance must nonetheless remain 'substantially consistent' with the master plan," citing N.J.S.A. 40:55D-62(a). Id. at 105.

Therefore, in Myers, while we reversed the trial court order that required the City to "'[a]mend the zoning ordinance to conform with . . . [its] master plan re[]examination report[,]' or '[h]old a hearing as required under N.J.S.A. 40:55D-62(a) to permit the zoning ordinance to remain inconsistent with the master plan,'" id. at 99 (first, third and fourth alterations in original), "[w]e d[id] so without prejudice to any claim by plaintiffs that the City's zoning ordinance [wa]s invalid because it [wa]s not substantially consistent with the master plan,

in light of the failure to adopt the [reexamination] change, and any other remaining but unadopted changes proposed in the" reexamination report. Id. at 106.

Similarly, in Victor Recchia Residential Const. Inc. v. Zoning Bd. of Adjustment of Tp. of Cedar Grove, 338 N.J. Super. 242 (App. Div. 2001), we recognized the importance of the reexamination report to the master plan. In Victor Recchia, plaintiff in part, contended "the judge erred in finding the zoning ordinance consistent with the master plan." Id. at 245. We affirmed the judge's "declaration that the Township zoning ordinance [wa]s consistent with the Township's master plan" which included the board's reexamination report. Id. at 252.

Therefore, N.J.S.A. 40:55D-89 and our opinions in Myers and Victor Recchia, firmly establish that the Board's adoption of reexamination reports are not a "vague platitude" as suggested by Jersey Shore. Instead, the adopted reexamination reports became an integral part of the master plan. Thus, we reject Jersey Shore's contention that the trial court erred in considering the consistency reviews using the SARP and the Master Plan including the reexamination reports.

In conducting our de novo review and applying the presumption of validity to the Borough and Board's actions as we must, we are satisfied that the SARP and the Master Plan, including the adopted 2015 Reexamination Report, are not inconsistent, under N.J.S.A. 40A-12A-7(e), but rather "substantially consistent" under N.J.S.A. 40A:12A-7(d). There is nothing in the SARP that "substantially or materially undermine[s] or distort[s] the basic provisions and objectives of the Master Plan." Manalapan Realty, 140 N.J. at 384.

Ultimately, "[a] zoning ordinance is insulated from attack by a presumption of validity, which may be overcome by a showing that the ordinance is 'clearly arbitrary, capricious or unreasonable, or plainly contrary to fundamental principles of zoning or the [zoning] statute.'" Riggs v. Long Beach, 109 N.J. 601, 610-11 (1988) (quoting Bow & Arrow Manor v. Town of W. Orange, 63 N.J. 335, 343 (1973)). At trial, Jersey Shore bore "the burden of overcoming the presumption." Id. at 611. The burden is "heavy," 515 Assocs. v. City of Newark, 132 N.J. 180, 185 (1993); and can only be overcome by evidence that is "clear." Kozesnik v. Montgomery, 24 N.J. 154, 167 (1957); see also Crispino v. Tp. of Sparta, 243 N.J. 234, 252 (2020) (finding the presumption of valid assessments was overcome "by clear and convincing evidence").

Because we reject Jersey Shore's arguments that the SARP facially violated the PTD and was adopted after deficient consistency reviews by the Board and the Council, we conclude that Jersey Shore was unable to overcome the heavy burden that the SARP was presumptively valid.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2379-22